DWIGHT D. TURCOL, Plaintiff-Appellant, v. THE PENSION BOARD OF TRUSTEES OF MATTESON POLICE PENSION FUND, Defendant-Appellee.

First District (4th Division) No. 1—03—1188

Opinion filed August 11, 2005.

Law Office of Stanley H. Jakala, of Berwyn (Stanley H. Jakala, of counsel), for appellant.

Law Offices of Richard J. Puchalski, of Chicago (Richard J. Puchalski, of counsel), for appellee.

PRESIDING JUSTICE QUINN delivered the opinion of the court:

On January 11, 2000, plaintiff Dwight Turcol filed an application with defendant, the Matteson Police Pension Board (the Board), for a line-of-duty disability pension pursuant to section 3—114.1 of the Illinois Pension Code (40 ILCS 5/3—114.1 (West 2000)). After a hearing, the Board denied his application because (1) Turcol had failed to establish that he was disabled; (2) no pension could be awarded because, pursuant to section 3—115 of the Pension Code (40 ILCS 5/3—115 (West 2000)), only two of the three physicians selected by the Board certified that Turcol was disabled; and (3) Turcol had failed to take reasonable measures to remedy his alleged condition. The Board also denied Turcol's motion requesting a hearing into the alleged biases of two Board trustees, based upon both the paucity of Turcol's allegations and the absence of any statutory authority granting it the power to hold such a hearing.

Turcol thereafter filed a complaint for administrative review in the circuit court, arguing, among other things, that the Board's finding that he was not disabled was against the manifest weight of the evidence and that section 3—115's "three Board-selected physician certification" requirement violated his right to due process. Declining to reach Turcol's constitutional argument, the circuit court affirmed the Board's decision, finding that the Board's ruling was not against the manifest weight of the evidence.

Turcol appealed from that judgment. On appeal, Turcol contended that (1) the Board's finding that he was not disabled was against the manifest weight of the evidence; (2) section 3—115 of the Illinois Pension Code (40 ILCS 5/3—115 (West 1998)) is unconstitutional; (3) the Board unreasonably penalized him for not undergoing arthroscopic surgery to remedy his injury; and (4) the Board should have held a hearing into the alleged biases of the two trustees of the Board. In an unpublished order, we affirmed the decision of the Board. See *Turcol v. Pension Board of Trustees of Matteson Police Pension Fund*, No. 1—03—1188 (March 11, 2004) (unpublished order under Supreme Court Rule 23). In that decision, we found that the Board properly

denied Turcol's pension application because only two of the three Board-selected physicians certified that Turcol was disabled in derogation of our reading of section 3—115's requirement that all three physicians must so certify. See *Turcol,* slip op. at 8. We also found no constitutional impairment in this interpretation of section 3—115. See *Turcol,* slip op. at 14-15.

On April 7, 2005, our supreme court, having granted Turcol's leave to appeal, dismissed his appeal as improvidently granted and entered a supervisory order directing this court to consider, first, whether the Board's finding that Turcol had failed to prove his disability was against the manifest weight of the evidence and, if this court confirms the Board on that ground, to withdraw our previously filed order. See *Turcol v. Pension Board of Trustees of the Matteson Police Pension Fund,* 214 Ill. 2d 521, 524-25, 828 N.E.2d 277, 279 (2005). For the following reasons, we affirm the decision of the Board on that basis, withdraw our previous order, and, pursuant to the doctrine of constitutional avoidance, decline to address Turcol's due process argument.

## BACKGROUND

Turcol became a police officer with the Matteson police department in October 1985. On February 22, 1999, Turcol was injured on duty while arresting a suspect. Turcol subsequently sought medical treatment from Dr. Imlach, who prescribed the medication Lodine to control the pain and asked Turcol to return for a follow-up visit on February 26, 1999.

On February 26, 1999, Turcol returned to see Dr. Imlach and complained of continuous pain in his right shoulder. Dr. Imlach prescribed physical therapy, and the police department placed Turcol on light duty until March 10, 1999. Turcol then had an MRI to diagnose the cause of the shoulder pain. On March 23, 1999, based on the MRI results, Dr. Imlach suspected there was a possible tear in Turcol's rotator cuff and referred Turcol to Dr. Davis.

On June 2, 1999, Dr. Davis performed surgery on Turcol's right shoulder. After surgery, Turcol received physical therapy and did not return to work until June 28, 1999. Upon his return, Turcol was assigned to light duty at the village hall.

On November 16, 1999, Turcol went to see another orthopedic surgeon, Dr. Brian Cole, for an independent evaluation and treatment plan. Dr. Cole suggested that Turcol continue with the strengthening and range-of-motion exercises that Dr. Davis had prescribed. Dr. Cole also believed that Turcol's condition should improve within six to eight weeks and that his prognosis for recovery was "good to excel-

lent," but suggested that Turcol should not return to full-time police duty. On January 11, 2000, Turcol filed an application for disability benefits with the Board.

On February 14, 2000, Turcol went back to see Dr. Cole for the pain in his right shoulder. Dr. Cole recommended arthroscopic surgery to examine Turcol's shoulder. Dr. Cole told Turcol that if there was any injury, he could correct it at the same time as the examination "without difficulty." Turcol then went back to see Dr. Davis to ask for his opinion on the arthroscopic surgery. Dr. Davis agreed with Dr. Cole's recommendation, but he warned Turcol that there was no guarantee that the procedure would work, saying that he "might get better" or he "might get worse." Turcol told Dr. Davis that he did not want another operation if the result was not guaranteed. On August 21, 2001, Turcol obtained a job working as a driver's license examiner for the Office of the Secretary of State.

On September 25, 2001, the Board held a hearing on Turcol's application for disability benefits. At the hearing, Turcol submitted a report from Dr. Cole and certifications from two of the three doctors selected by the Board, Drs. Mayer and Ryan, opining that he was disabled and unable to return to his job as a police officer. The third Board-selected doctor, Dr. Milgram, found that Turcol was neither permanently disabled nor prevented from returning to police duties. According to his report submitted to the Board, Dr. Milgram stated:

> "The patient's examination reveals that he has a full range of motion of his shoulder with no crepitus, no AC joint tenderness and I found no weakness to exam. He claims some discomfort on forced external rotation but he was 5/5 in strength as he was with all other motions. He has a well healed tear. The only test he brought with him was an arthrogram. There is evidence of fluid in the shoulder joint and there is also fluid in the subacromial joint. If there is fluid in the subacromial joint it means there is some area of leaking of the fluid into the subacromial bursa so there is probably some persistence of defect in the rotator cuff. There is certainly no major tear, however, and all of the structures seem to be intact. No specific tear could be identified by the radiologist nor by me on looking at the tests. The supraspinatus tendon appears to be intact on all cuts and no specific tear is described in the narrative of the report either, but I looked at the original arthrogram films. There is an operative note that describes that the patient basically had a very tiny attritional tear near the insertion of the rotator cuff. This means by attritional tear that there is degenerative change in the cuff and this was not a traumatic abnormality.
>
> It appears to me that the patient's surgery was done for pain. He did have an acromioplasty but I do not think that significant pathol-

ogy was found at the time of surgery that should render the patient unable to function as a police officer. He has had that surgery, he has recovered from the surgery and it is my feeling that he can return to work as a police officer at the present time. If further surgery is indicated, I think it should just be a diagnostic arthroscopy to look at both the subacromial bursa and the shoulder from inside and see if any other pathology is present that may have been missed by both the MRI and the surgeon. I think that there is no indication for any type of surgical treatment of rotator cuff tear here and I think that he probably does not require an open operation. He tells me that he has to wrestle with people and fight as part of his job of police officer and that he is weak. I just do not find atrophy, I do not find significant disease, there is not objective disease present here to justify the degree of complaints that the patient is alleging.

You did not send me all of the medical reports, but the patient had copies of the reports of the MRIs, his doctors' records and the operative notes so I have reviewed the actual documents. He brought with him the January 18, 2000 MRI which I also reviewed and went through with him. I did discuss my conclusions with him too. I also recommended that he might consider having a diagnostic arthroscopy to evaluate if any further treatment could be offered to him. I just do not find that he is disabled as he claims, however."

In addition to these reports, the parties agreed to submit evidence depositions of both Turcol and Dr. Milgram, neither of whom was present for the hearing. In his deposition, Turcol stated that he had injured his shoulder while subduing a suspect. He further stated that he had helped his brother race stock cars for 10 years, but no hard labor was involved; sometime in 2000, he helped a friend build a patio deck, but his role was confined to sweeping the sawdust off of the floor; he experienced constant pain in his shoulder and used Tylenol to control the pain; he had not seen a doctor in 2001 for the pain in his shoulder; and he was uncertain whether he would return to the police force if offered a light-duty position.

In Dr. Milgram's evidence deposition, taken by Turcol's counsel, he stated that he continued to agree with his initial opinion set forth in his report: based upon a reasonable degree of medical certainty, Turcol was not disabled. Dr. Milgram stated that he had conducted about six or seven prior evaluations of police officers or fire fighters who were seeking disability pension benefits. When asked about the contrary opinions of Drs. Mayer, Ryan, and Cole, Dr. Milgram said he disagreed with their findings that Turcol was disabled. He stated that Dr. Ryan is "an old man" whom he believed "[did] not do surgery anymore," and characterized Dr. Cole as a "very aggressive surgeon"

who would "operate on anyone that breathes." He further noted that he and Dr. Cole have had "sharp disagreements" about "the indications for surgical treatments," and while believing him to be "technically a good surgeon," Dr. Milgram had seen "a patient, unfortunately, who [Cole] really *** made worse."

At the conclusion of the hearing, Turcol filed a motion to recuse two trustees of the Board, Sgt. Ray Sutorious and Officer David Nagel, alleging that they were biased and prejudiced against him. Turcol filed an affidavit in support of his recusal motion in which he stated that Sgt. Sutorious "disliked" him, though no reason for Sgt. Sutorious's discontent was given. Turcol also averred that Sgt. Sutorious had "created conflict" between him and Officer Nagel by informing Officer Nagel that Turcol had reported him to a superior officer for failing to obey a stop sign. As a result of the "friction" that Sgt. Sutorious had created, Officer Nagel "threw a paper in [Turcol's] direction for the purpose of engaging in a verbal confrontation."

In response to the recusal motion, both Sgt. Sutorious and Officer Nagel submitted affidavits stating that the allegations in Turcol's recusal motion were untrue and that they would be fair and impartial and would not prejudge Turcol's disability pension application. On November 28, 2001, two months after the hearing before the Board, Turcol filed a motion requesting that the Board hold an evidentiary hearing on his recusal motion.

On March 8, 2002, the Board denied Turcol's disability pension application. In denying Turcol's claim, the Board stated it placed greater weight upon Dr. Milgram's report, which stated that Turcol was not disabled, because it found that he was more credible than Drs. Ryan and Mayer. The Board further noted that Turcol's own treating physician, Dr. Cole, opined that Turcol's rotator cuff could be arthroscopically repaired without difficulty, but Turcol declined to undergo the surgery; even though Turcol claimed his injury was serious, he did not see any doctor regarding his shoulder in 2001; Turcol used over-the-counter Tylenol to treat his pain; and Turcol was uncertain whether he would return to the Matteson police department even if offered a light-duty position. The Board also denied Turcol's request for a hearing into the trustees' alleged biases.

## ANALYSIS

On appeal, Turcol first argues that the Board's finding that he was not disabled, based in large part on the report and evidence deposition of Dr. Milgram, was against the manifest weight of the evidence. Turcol contends that Dr. Milgram's opinion is not credible because he was biased and prejudiced against him for the following reasons: (1)

Dr. Milgram did not have all of Turcol's medical reports when he evaluated him; (2) though Dr. Milgram had evaluated six or seven police officers who were seeking pension benefits, he "could not remember ever rendering an opinion in their favor for disability"; (3) the previous six or seven pension cases had been referred to him by the same law firm; (4) he "belittled" Dr. Ryan's and Dr. Cole's opinions; and (5) Dr. Milgram's findings were "conjectural" because some sentences in his report began with the words "I think" or "I believe." Thus, he argues, the Board erred in relying on Dr. Milgram's opinion in denying his disability application.

■ Article III of the Pension Code provides that judicial review of the Board's decision must be in accordance with the Administrative Review Law (735 ILCS 5/3—101 *et seq.* (West 2000)). On administrative review, a court's function is to ascertain whether the findings and decision of the agency are against the manifest weight of the evidence. *Robbins v. Board of Trustees of the Carbondale Police Pension Fund*, 177 Ill. 2d 533, 538 (1997). In doing so, "[w]e do not reweigh the evidence or make an independent determination of the facts; rather, we ascertain whether the factual findings made by the administrative agency are against the manifest weight of the evidence." *Coyne v. Milan Police Pension Board*, 347 Ill. App. 3d 713, 721 (2004).

"Factual findings are against the manifest weight of the evidence only where 'it is clearly evident the [agency] erred and should have reached the opposite conclusion.' " *Coyne*, 347 Ill. App. 3d at 721, quoting *Board of Education of Round Lake Area Schools v. State Board of Education*, 292 Ill. App. 3d 101, 109 (1997). The mere fact that an opposite conclusion is reasonable or that the reviewing court might have ruled differently will not justify reversal of the administrative findings. *Robbins*, 177 Ill. 2d at 538. If the record contains evidence that supports the agency's decision, it should be upheld. *Demski v. Mundelein Police Pension Board*, 358 Ill. App. 3d 499, 504 (2005), citing *Abrahamson v. Illinois Department of Professional Regulation*, 153 Ill. 2d 76, 88 (1992).

■ In this case, there is no question that there was sufficient evidence in the record to support the Board's finding that Turcol was not disabled as evidenced by Dr. Milgram's report and evidence deposition. Though Turcol seeks to paint Dr. Milgram as a "pro-Board" and "anti-pension applicant" doctor, we find his attack upon Dr. Milgram's credibility unpersuasive. Moreover, the Board was aware, through Dr. Milgram's evidence deposition taken by Turcol's counsel, of all of Dr. Milgram's alleged "biases and prejudices" as highlighted by Turcol here on appeal. We decline Turcol's invitation to reweigh the credibility determination made by the Board, nor can we say that the op-

posite conclusion was "clearly evident." See *Coyne,* 347 Ill. App. 3d at 721 (stating that factual findings are against the manifest weight of the evidence only where the opposite conclusion from that reached by the agency is "clearly evident").

Turcol relies upon *Wilfert v. Retirement Board of the Firemen's Annuity & Benefit Fund,* 318 Ill. App. 3d 507 (2000), to support his argument that the Board's decision was against the manifest weight of the evidence. In *Wilfert,* the court found that the Board's decision that the pension applicant was not disabled was against the manifest weight of the evidence because the testimony of two Board-selected physicians, relied upon by the Board in denying pension benefits, was insufficient to support that decision. See *Wilfert,* 318 Ill. App. 3d at 516-18. In discussing the testimony of these two physicians, the court noted that the physicians' reports contained "inaccuracies," were "conclusory," and, at times, misstated evidence and were contradictory. See *Wilfert,* 318 Ill. App. 3d at 516-18. The court also noted that one of the physicians "first testified that he had no opinion to a reasonable degree of medical certainty" on the issue of whether the applicant's disability had ended. *Wilfert,* 318 Ill. App. 3d at 517. The court concluded: "As the discussion above shows, Dr. Motto's opinion and Dr. Ryan's opinions lack a factual basis in this record and are often contradicted by the tests and reports Drs. Motto and Ryan ordered." *Wilfert,* 318 Ill. App. 3d at 518. We find Turcol's reliance upon *Wilfert* misplaced.

Turcol does not claim that Dr. Milgram, either in his report or in his evidence deposition, ever misstated evidence or contradicted his earlier findings. Furthermore, unlike one of the physicians in *Wilfert,* Dr. Milgram testified that his opinion that Turcol was not disabled was based upon a reasonable degree of medical certainty. Thus, we find that the Board's decision was sufficiently supported by Dr. Milgram's testimony. Having found that the Board's decision was not against the manifest weight of the evidence, and following our supreme court's explicit directive, we decline to address Turcol's claim that his right to due process was violated by section 3—115, and we withdraw our previously entered Rule 23 order in this case. See *Turcol v. Pension Board of Trustees of Matteson Police Pension Fund,* 214 Ill. 2d 521, 524, 828 N.E.2d 277, 279 (2005), citing *Vuagniaux v. Department of Professional Regulation,* 208 Ill. 2d 173, 184 (2003) (stating that it is fundamental that courts should consider the constitutionality of a statute only when necessary to decide the case).

■ While we withdraw our prior decision, we reaffirm our prior rulings as to Turcol's remaining issues. Turcol argues that the Board improperly considered his refusal to undergo arthroscopic surgery as a

basis for denying his application for disability benefits. He contends that he properly opted to forgo the surgery because his doctors could not "guarantee" the surgery would be beneficial.

Regardless of the type of pension a claimant seeks, a compensable disability will not be found if he unreasonably refuses necessary medical treatment. *Coyne*, 347 Ill. App. 3d at 725, citing *Mulack v. Hickory Hills Police Pension Board*, 252 Ill. App. 3d 1063 (1993). In other words, the term "disability" excludes conditions that can be remedied without significant danger or extraordinary suffering, and when medical opinion offers a reasonable prospect for relief. *Coyne*, 347 Ill. App. 3d at 725. However, medicine is not an exact science, and if a claimant's refusal of treatment is within the bounds of reason, his freedom of choice should be preserved even though the treatment might mitigate the employer's damages. *Coyne*, 347 Ill. App. 3d at 725.

We find *Mulack* to be instructive. In *Mulack*, the petitioner was a police officer who injured his knee while chasing a suspect. *Mulack*, 252 Ill. App. 3d at 1064. Several medical experts testified that if Mulack were to undergo knee surgery, which was considered to be safe and had a high rate of success, he could return to work. *Mulack*, 252 Ill. App. 3d at 1066. In affirming the circuit court's reversal of the pension board's denial of disability benefits, this court held:

> "Medicine is not an exact science, and it is clear that any given ailment may suggest a number of reasonable treatment alternatives depending upon the skills and experiences of the physician making a diagnosis. As the supreme court noted in *Rockford Clutch Division, Borg-Warner Corp. v. Industrial Comm'n* (1966), 34 Ill. 2d 240, 247-48, '[i]f a claimant's response to an offer of treatment is within the bounds of reason, his freedom of choice should be preserved even when an operation might mitigate the employer's damages.' " *Mulack*, 252 Ill. App. 3d at 1071.

In this case, Dr. Cole, the independent physician retained by Turcol, recommended arthroscopy. Dr. Cole stated in his report:

> "I informed him [Turcol] that the worse [*sic*] case scenario is that he would require a small mini open incision but not a frank open incision to take the deltoid down and repair the intraarticular pathology. More than likely, however, I can repair a rotator cuff tear of this size arthroscopically without difficulty."

On the other hand, Dr. Mayer, one of the Board-selected physicians, opined that "further surgery is probably unlikely to affect his disability from police work."

Though holding out for a "guarantee" of beneficial results would be an unreasonable refusal of medical treatment (we doubt whether such a guarantee would ever be forthcoming from an ethical physi-

cian), based upon the uncertainty that surgery would benefit Turcol, we find that his refusal was within the bounds of reason. Thus, the Board erred in considering his refusal as a basis for its denial of disability benefits.

■ Finally, Turcol argues that the Board erred when it failed to hold an evidentiary hearing to determine whether two trustees of the Board were biased and prejudiced against him. It is well settled that administrative officials are presumed to be objective and capable of fairly judging a particular controversy. *A.R.F. Landfill, Inc. v. Pollution Control Board*, 174 Ill. App. 3d 82, 89 (1988). An individual challenging the impartiality of an administrative tribunal must overcome a presumption that those serving in such tribunals are fair and honest. *Klomann v. Illinois Municipal Retirement Fund*, 284 Ill. App. 3d 224, 229 (1996). Further, in order to show bias, the plaintiff must prove that members of the adjudicating body had to some extent adjudged the facts as well as the law of the case in advance of hearing it. *Waste Management of Illinois, Inc. v. Pollution Control Board*, 175 Ill. App. 3d 1023, 1040 (1988).

Though Turcol's affidavit stated that Sgt. Sutorious "disliked" him, no explanation was given as to why this was so. Turcol also averred that Sgt. Sutorious had "created conflict" between him and Officer Nagel by informing Officer Nagel that Turcol had reported him to a superior officer for failing to obey a stop sign, and as a result of the "friction" that Sgt. Sutorious had created, Officer Nagel "threw a paper in [Turcol's] direction for the purpose of engaging in a verbal confrontation." After Turcol lodged this allegation, both Sgt. Sutorious and Officer Nagel provided affidavits stating that Turcol's allegations were untrue and that, as trustees, they would be fair and impartial when deciding his disability petition.

In light of these counteraffidavits, Turcol's affidavit falls far short of demonstrating that members of the Board had to some extent adjudged the facts as well as the law of the case in advance of hearing it. See *Waste Management of Illinois, Inc.*, 175 Ill. App. 3d at 1040 (explaining burden placed on applicant who alleges administrative members are biased against him). Moreover, a review of the Code indicates that no provision requires (or, more importantly, permits) the Board to hold an evidentiary hearing into the alleged bias of its own members. Thus, Turcol had no absolute right to such a hearing, and we cannot say that the Board erred in denying his motion.

Turcol relies heavily on *Polk v. Board of Trustees of the Police Pension Fund*, 253 Ill. App. 3d 525 (1993), to support his argument. In *Polk*, we held that "[i]t is proper to have some blend of judicial and prosecutorial or investigative functions in an administrative proceed-

ing *provided that the person performing the quasi-prosecutorial or investigative function is not a member of the decision-making body.*" (Emphasis in original.) *Polk*, 253 Ill. App. 3d at 541. In *Polk*, two trustees of the pension board acted as independent investigators and questioned subordinates after the hearings began. We found that the suggestion of coercion was obvious. *Polk*, 253 Ill. App. 3d at 542.

In this case, no trustee of the Board acted as an investigator, nor was there any implication of coercion. Thus, *Polk*'s ruling is not applicable to this case.

For the reasons stated above, we affirm the decision of the Board denying pension benefits to Turcol. We also withdraw our earlier-filed Rule 23 order.

Affirmed.

GREIMAN and THEIS, JJ., concur.