# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

***Goodman v. Morton Grove Police Pension Board*, 2012 IL App (1st) 111480**

---

| | |
|---|---|
| Appellate Court Caption | JASON GOODMAN, Plaintiff-Appellee, v. MORTON GROVE POLICE PENSION BOARD, Defendant-Appellant. |
| District & No. | First District, Third Division <br> Docket No. 1-11-1480 |
| Filed | February 8, 2012 |
| Held <br> (*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The trial court's decision reversing defendant police pension board's denial of plaintiff police officer's application for a disability pension was reversed by the appellate court and the board's decision was affirmed where the evidence in the record, including the report prepared by a functional capacity evaluator, indicated that although plaintiff suffered a knee injury from the performance of an act of duty, he should be able to perform the duties of a police officer, and, therefore, the board's decision was not against the manifest weight of the evidence. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 10-CH-51381; the Hon. Michael B. Hyman, Judge, presiding. |
| Judgment | Reversed. |

Counsel on
Appeal

Richard J. Puchalski and Laura J. Goodloe, both of Puchalski & Goodloe, of Libertyville, for appellant.

Adam J. Scholl, of Donald W. Fohrman & Associates, Ltd., of Chicago, for appellee.

Panel

JUSTICE MURPHY delivered the judgment of the court, with opinion.
Presiding Justice Steele and Justice Salone concurred in the judgment and opinion.

**OPINION**

¶ 1     On October 22, 2006, plaintiff, Jason Goodman, a police officer for the Village of Morton Grove, injured his left knee while conducting a traffic stop. The injury required arthroscopic surgery in November 2006 and microfracture surgery in 2007. Goodman continued to complain of pain and reduced function in his knee. On February 8, 2009, Goodman filed an application for disability pension with defendant Morton Grove Police Pension Board (Board) pursuant to the Illinois Pension Code (40 ILCS 5/3-101 *et seq.* (West 2008)). Following examination by physicians and a hearing on the matter, the Board issued a decision and order on November 8, 2010, denying plaintiff's application for a line-of-duty disability pension (40 ILCS 5/3-114.1 (West 2008)) or not-in-duty disability pension (40 ILCS 5/3-114.2 (West 2008)) .

¶ 2     Pursuant to the Administrative Review Law (735 ILCS 5/3-101 *et seq.* (West 2008)), Goodman sought administrative review of the Board's decision and order in the circuit court of Cook County. Following the Board's answer and briefing by the parties, the trial court reversed the Board's decision as against the manifest weight of the evidence and remanded the matter for a hearing on the causation of Goodman's injury. The Board issued an order indicating that Goodman's disability resulted from an act of police duty. On May 25, 2011, the trial court entered a final order reversing the Board's decision as against the manifest weight of the evidence. The Board filed a notice of appeal that same day and argues that its decision was not against the manifest weight of the evidence. For the following reasons, we reverse the order of the trial court and affirm the decision of the Board.

¶ 3                                I. BACKGROUND

¶ 4     A. Goodman's Application for Disability Pension and Prehearing Objection

¶ 5     Goodman filed his application for certificate of disability with the Board on February 8, 2009, seeking placement on the police pension roll under a disability pension. At the commencement of the hearing, counsel for Goodman objected to the inclusion of a

September 2009 discrimination charge made by Goodman against the Board. Counsel argued that this charge had no bearing on the determination of Goodman's disability. Counsel for the Board asserted that the claim went to Goodman's credibility because he asserted that he had been denied pension benefits even though that had not occurred. The document was admitted over objection, with the hearing officer specifically stating that the discrimination claim itself would not be considered, but it would only be referenced for the language of the complaint.

¶ 6                                    B. Administrative Hearing

¶ 7          Goodman testified at the hearing that he had been employed as a police officer for the Village of Morton Grove since May 4, 1998. His duties as a patrol officer included traffic stops, security checks, and premises checks. On October 22, 2006, he sustained his knee injury when he stepped in a crevice in the pavement exiting his squad car and his knee gave out. Goodman notified his supervisor, who met him at the scene, and was then taken to Lutheran General Hospital. At the hospital, Goodman provided his medical history, was examined and was referred to an orthopedic specialist. Goodman testified that he had injured his knee while in the Army requiring arthroscopic surgery in 1995. He returned to duty and remained in the Army, until he was honorably discharged in 1998. Goodman testified that he did not have issues with the knee again until his injury on October 22, 2006.

¶ 8          Goodman was examined by the specialist and given an MRI. The MRI indicated that Goodman had suffered a rupture of the anterior cruciate ligament and degenerative changes in the medial compartment. On November 27, 2006, Drs. John Lyon and Arif Ali performed arthroscopic surgery on Goodman to reconstruct his anterior cruciate ligament. Following physical therapy, he returned to work but experienced continued pain and decreased range of motion. He also had problems running, using stairs, squatting or stooping, and other activities requiring him to bend his knee.

¶ 9          Goodman testified that a second procedure, microfracture surgery, was completed by Dr. Ali. He again underwent physical therapy, but continued to have the same issues with his knee as before. On Dr. Ali's recommendation, Goodman consulted Dr. James Bresch, who determined that the microfracture procedure failed and recommended a third surgery, either knee replacement or a cadaveric transplant. Goodman testified that he was uncomfortable with these surgeries as well as the number of surgeries he had already undergone. On June 27, 2008, Dr. Ali advised Goodman that he was at maximum recovery and opined that he would not be able to return to work as a police officer. Goodman testified that he was not offered light-duty work and filed his application for disability.

¶ 10         Goodman was questioned concerning his application for disability pension with the Veteran's Administration in 2001. Goodman testified that this application was in response to his medical records being lost and his concern that his knee injury and oral surgery during his time with the Army be documented in the event of future complications. He was awarded a partial disability pension of 10% in August 2007. In addition, Goodman testified that in September 2009, he filed an Equal Employment Opportunity Commission (EEOC) discrimination complaint against the Village of Morton Grove with the Illinois Department

of Human Rights because he felt his application for disability pension was not being diligently considered.

¶ 11                          C. Medical and Functional Capacity Evaluation Reports

¶ 12    The Board sought documentation of Goodman's disability pension claim with the Veteran's Administration through an administrative subpoena, but no response was received. Pursuant to the Pension Code (40 ILCS 5/3-115 (West 2008)), the Board had Goodman examined by three doctors. Dr. Michael Jacker reviewed Goodman's records, took a history from Goodman and examined him on November 16, 2009. He concluded that Goodman sustained a left knee anterior cruciate ligament injury and a medial femoral condyle osteochondral injury in a work-related injury. He opined that Goodman was at a stationary point in progress without the further recommended surgery and the outlook for recovery and return to employment as a police officer was "guarded," even with surgery. Dr. Jacker recommended a functional capacity evaluation (FCE) to determine Goodman's actual level of maximal function.

¶ 13    Dr. David Raab also provided an independent medical evaluation on April 19, 2010. Dr. Raab had conducted a previous evaluation in 2008 and reviewed Goodman's records from Dr. Ali, as well as Dr. Jacker's evaluation. Dr. Raab opined that Goodman was likely disabled due to his knee injury of October 22, 2006, and not his injury or surgery from 1995. He further opined that Goodman should be functional with regard to his ability to work, but recommended an FCE be completed to determine his ability to return to work as a police officer.

¶ 14    The third doctor to examine Goodman was Dr. Chadwick Podromos on April 26, 2010. Podromos examined Goodman and his medical records and opined that the persistent pain was likely due to the femoral condyle articular cartilage lesion. Goodman had an MRI of his knee on May 26, 2010, as recommended by Dr. Podromos.

¶ 15    Goodman underwent an FCE on June 1, 2010. The FCE evaluator provided a comprehensive report, finding that Goodman was compliant and passed 35 of 37 reliability criteria. While the testing did not measure Goodman's running ability, the evaluator opined that Goodman could perform at a medium physical demand level. Citing job description "Police Officer I (DOT# 375.263.014)" from The Dictionary of Occupational Titles (DOT), the evaluator concluded that Goodman should be able to continue to perform his duties as a police officer, with certain limitations on lifting and carrying.

¶ 16    Dr. Podromos examined Goodman the next day and reviewed his MRI, although he did not review the FCE. Dr. Podromos identified effusion in the knee with Goodman exhibiting marked pain with forced flexion and marked posterior medial joint line tenderness. Dr. Podromos' assessment indicated that Goodman was disabled and could not function as a police officer but that he could be expected to handle a sedentary task reasonably well.

¶ 17    Dr. Raab reviewed the FCE and provided an addendum to his evaluation. Dr. Raab found the FCE to be valid and adopted the opinion of the evaluator that Goodman could perform at the medium physical demand level. Since a police officer is classified as medium duty, Dr. Raab agreed that Goodman should be able to continue to perform his duties as a police

-4-

officer. Dr. Raab also noted that the Board had questioned whether knowing Goodman applied for disability with the Veteran's Administration would change his opinion that Goodman's current disability was unrelated to his prior knee injury. He stated that he knew Goodman had surgery but was unaware of this prior disability claim and could provide an addendum if a review of additional information would change his prior opinion.

¶ 18                        D. Administrative Decision and Order

¶ 19       The Board issued its written decision and order on November 8, 2010, denying Goodman's application in its entirety. The Board highlighted that the only medical records submitted by Goodman were Dr. Ali's prognosis notes dated June 27, 2008, roughly two years before the Board's requested medical examinations. The Board challenged Goodman's credibility based on his lack of cooperation in failing to respond to the Board's administrative subpoena, stating that he misstated his physical condition to Drs. Jacker and Raab by stating he was having no problems with his knee prior to the October 2006 injury when he had applied for a disability pension with the Veteran's Administration, and that he claimed the Board had denied his pension disability benefits in his EEOC claim when that obviously was not the case.

¶ 20       The Board noted that its decision did not rest solely on its determination of Goodman's credibility. The Board noted that while it found Goodman lacked credibility, the denial of his disability application was supported by the administrative record. Dr. Raab's medical report and review of the FCE supported the conclusion that Goodman was not disabled for police duty. It also cited to Dr. Jacker's conclusion that, while the return to service was "guarded," Goodman's status could not be properly assessed without an FCE. Accordingly, the Board concluded that Dr. Jacker would come to the same conclusion as Dr. Raab if he had reviewed the FCE. Furthermore, while Goodman took issue with some of the determinations of the FCE, the Board noted that no evidence or case law was provided by Goodman to undermine the results of the FCE or the use of it as reliable evidence. The Board rejected Goodman's claim he was disabled and did not reach the issue of causation.

¶ 21                        E. Administrative Review and Appeal

¶ 22       Goodman filed a complaint for administrative review in the circuit court of Cook County. The Board filed its answer and after briefing by the parties, the trial court reversed the Board's decision as against the manifest weight of the evidence. The matter was remanded to the Board for a hearing on the causation of Goodman's injury. The Board issued an order indicating that if the circuit court order were affirmed on review, Goodman's disability resulted from an act of police duty. On May 25, 2011, the trial court entered a final order reversing the Board's decision as against the manifest weight of the evidence. This appeal followed.

¶ 23                              II. ANALYSIS

¶ 24       In an action under the Administrative Review Law, factual determinations by an

administrative agency are held to be *prima facie* true and correct and will stand unless contrary to the manifest weight of the evidence. 735 ILCS 5/3-110 (West 2008); *Amigo's Inn, Inc. v. License Appeal Comm'n*, 354 Ill. App. 3d 959, 964 (2004). We review the decision of the agency, not the circuit court, and to find the agency's determination against the manifest weight of the evidence requires a finding that all reasonable people would find that the opposite conclusion is clearly apparent. *North Avenue Properties, L.L.C. v. Zoning Board of Appeals*, 312 Ill. App. 3d 182, 184 (2000). However, questions of law are subject to *de novo* review. *Enesco Corp. v. Doherty*, 314 Ill. App. 3d 123, 131 (2000).

¶ 25　　As the hearing officer is the fact finder responsible for overseeing testimony, making credibility determinations and assigning weight to statements made by witnesses, we review the decision of the Board, not the circuit court. *Ahmad v. Board of Education of the City of Chicago*, 365 Ill. App. 3d 155, 162 (2006). In making this determination, we do not weigh the evidence or substitute our judgment for that of the administrative agency. *Abrahamson v. Illinois Department of Professional Regulation*, 153 Ill. 2d 76, 88 (1992). Simply put, if there is evidence of record that supports the agency's determination, it must be affirmed. *Abrahamson*, 153 Ill. 2d at 88.

¶ 26　　A plaintiff in an administrative proceeding bears the burden of proof, and if he fails to meet that burden, relief will be denied. *Marconi v. Chicago Heights Police Pension Board*, 225 Ill. 2d 497, 532 (2006) (*per curiam*). The Illinois Pension Code provides that a police officer is entitled to a disability pension if "as the result of sickness, accident or injury incurred in or resulting from the performance of an act of duty, [he or she] is found to be physically or mentally disabled for service in the police department." 40 ILCS 5/3-114.1 (West 2010). There is no argument that Goodman sustained an injury from the performance of an act of duty or that he suffered continued issues from that injury as all three of the examining doctors and the FCE evaluator identified. The issue is whether his injury rendered him disabled for service in the police department.

¶ 27　　We first consider Goodman's challenge to the Board's credibility finding and his claim that this demonstrated the Board's bias against him. We find there is no evidence of record to support Goodman's claim that the Board was biased. Review of such a claim begins with the presumption that administrative officials are objective, fair and honest, and capable of fairly judging a controversy. *Turcol v. Pension Board of Trustees of Matteson Police Pension Fund*, 359 Ill. App. 3d 795, 780 (2005). The plaintiff must prove that the officials had adjudged the facts and law of the case in advance of the hearing. *Id.*

¶ 28　　Goodman does not present any evidence that his petition was adjudged prior to the hearing beyond the Board's discussion of his credibility and its ultimate ruling against him. While we may agree with Goodman that the Board's reliance on the language in his discrimination complaint and Dr. Raab's statement that he did not know Goodman had applied for disability with the Veteran's Administration do form at least some basis for the Board's conclusion that Goodman lacked credibility, this determination is not necessary to resolve this matter. The Board provided analysis of sufficient factual evidence to support its conclusion and this appeal may be resolved by resolving whether the Board's decision is against the manifest weight of the evidence.

¶ 29      The issue in this case is the Board's consideration and reconciling of the opinions rendered by the three physicians and the FCE evaluator. Both Drs. Raab and Jacker opined that an FCE was required to determine the extent of Goodman's injury and his abilities. The FCE evaluator provided an extensive report and support for the conclusion that Goodman should be able to perform the duties of a police officer. The FCE report was reviewed by Dr. Raab, who accepted these findings.

¶ 30      Certainly, considering the initial examinations, a contrary conclusion is reasonable; however, based on the FCE and Dr. Raab's review, it cannot be said that the opposite conclusion from that of the Board is clearly evident. Goodman points to the medical reports from Drs. Podromos and Ali to support his argument that the Board's decision is against the manifest weight of the evidence. However, Dr. Podromos was without the benefit of the FCE and, as the Board notes, Dr. Ali's observations and evaluation were made over two years earlier. The Board reviewed these reports and placed more weight on the FCE report and Dr. Raab's medical opinion following examination of Goodman and full review of all documents.

¶ 31      Goodman also argues that the FCE was deficient for the failure to gauge his ability to run and for following the DOT job description for a police officer and not a description furnished by the police department or village. He argues without reference to any evidence that more physical abilities are required for police officers than those listed in the job description utilized in the FCE. He asserts that the Board certainly should have made the reasonable inferences based on common knowledge that this job description was insufficient.

¶ 32      However, without evidence to support his burden of proof, whether Goodman finds it difficult to comprehend how the Board could perceive that he is able to perform as a police officer is not of import. He asserts that the Board should be well acquainted with the duties and physical requirements of the position. Without evidence to counter the job description reviewed by the Board, this assumption actually works against Goodman. There is evidence of record to support the Board's conclusion and that is sufficient to find that its decision is not against the manifest weight of the evidence and should be affirmed. Accordingly, the judgment of the circuit court is reversed.

¶ 33                               III. CONCLUSION

¶ 34      For the foregoing reasons, the decision and order of the Board are affirmed and the judgment of the trial court is reversed.

¶ 35      Reversed.