# Illinois Official Reports

## Appellate Court

---

**Olson v. Lombard Police Pension Fund, 2020 IL App (2d) 190113**

---

| | |
|---|---|
| Appellate Court Caption | TERRY OLSON, Plaintiff-Appellant, v. THE LOMBARD POLICE PENSION FUND and THE VILLAGE OF LOMBARD, Defendants-Appellees. |
| District & No. | Second District<br>No. 2-19-0113 |
| Rule 23 order filed<br>Motion to<br>publish allowed<br>Opinion filed | December 5, 2019<br><br>January 23, 2020<br>January 23, 2020 |
| Decision Under Review | Appeal from the Circuit Court of Du Page County, No. 18-MR-731; the Hon. Bonnie M. Wheaton, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Jerome F. Marconi, of Chicago, for appellant.<br><br>Charles H. Atwell, of Atwell & Atwell Law Offices, of Aurora, for appellee Lombard Police Pension Fund.<br><br>James V. Ferolo and Carmen P. Forte, of Klein, Thorpe & Jenkins, Ltd., of Chicago, for other appellee. |

Panel

JUSTICE BURKE delivered the judgment of the court, with opinion. Presiding Justice Birkett and Justice Schostok concurred in the judgment and opinion.

# OPINION

¶ 1 This administrative review action was brought by plaintiff, Terry Olson, from the denial of his application for a line-of-duty disability pension, pursuant to section 3-114.1 of the Illinois Pension Code (Code) (40 ILCS 5/3-114.1 (West 2018)) by defendant, the Lombard Police Pension Fund, through an action of its Retirement Board (Board). The Board allowed the Village of Lombard (Village) to intervene in the proceedings. The Board determined, by a preponderance of the evidence, that plaintiff's disability to his lower back was neither caused by, nor aggravated by, his on-duty activities on September 18, 2013. The Board denied plaintiff line-of-duty benefits. The trial court affirmed the Board's decision. Plaintiff appeals the Board's finding denying his application for line-of-duty disability benefits. We affirm.

¶ 2                                    I. BACKGROUND

¶ 3 Plaintiff filed an application for a line-of-duty disability pension on July 29, 2015, based on an incident that occurred at work on September 18, 2013 (the incident). Plaintiff alleged that on that date he sustained injuries to his lower back and to his left leg while engaged in a foot chase to apprehend a criminal suspect.

¶ 4 Plaintiff had been a Lombard police officer since July 6, 1987, working for approximately 29 years. While a police officer, plaintiff also owned and operated a construction company involving excavation and demolition work. Plaintiff testified that his side business was authorized by the Lombard Police Department (Department). He stated that after the incident, he did not perform any heavy-duty work.

¶ 5 Prior to the incident, plaintiff had experienced back pain three times. In 1998, plaintiff injured his back in a car accident. In February 2001, plaintiff experienced "sharp" lower back pain while removing his gun from its holster. He had to seek treatment in the Good Samaritan Hospital emergency room. In June 2013, approximately three months prior to the incident, plaintiff sought treatment at Edward Hospital for severe lower back pain that he experienced after walking in his kitchen and reaching for coffee from his microwave. At the hospital, plaintiff mentioned that he had been dealing with back pain intermittently for 15 years.

¶ 6 On September 18, 2013, while on duty, plaintiff responded to the scene of a residential burglary. When he arrived at the scene, plaintiff saw the suspect, who immediately fled. Plaintiff chased the suspect over a sidewalk, an asphalt parking lot, an asphalt roadway, grass, dirt, a concrete curb, and a parkway. With the help of two officers, plaintiff apprehended the suspect but fell to the ground in the process. Plaintiff stated that, while chasing the suspect, he felt a sharp pain in his left leg. Plaintiff stated that his leg pain worsened, and he started to feel back pain. After he apprehended the offender, plaintiff could not stand due to the pain. A supervisor called for paramedics. The ambulance report shows that plaintiff complained of pain in his leg, but there is no evidence of any complaint about his back.

¶ 7    Plaintiff was treated in the emergency room of Elmhurst Hospital. He testified at the hearing before the Board that during his treatment, he alerted the medical staff of an injury to his lower back. Plaintiff testified that the emergency physician attended to his leg, "flipped" him over, and attended to his "backside [*sic*]."

¶ 8    The emergency room records, however, reveal no treatment or examination of plaintiff's lower back. The records reflect a diagnosis of only a "left hamstring strain." During cross-examination, plaintiff conceded that, while at the emergency room, he did not receive treatment to his lower back or a diagnosis regarding his lower back.

¶ 9    On September 25, 2013, plaintiff completed and filed with his employer an "Illinois Form 45: Employer's First Report of Injury." Plaintiff reported that he sustained an injury to his left leg. Counsel stated during oral argument that plaintiff also noted on the form that he sustained an injury to his back. However, there is no evidence in the record to support counsel's claim. Also, according to the Board's decision and order, plaintiff testified that he assisted in the preparation of an "Employee Statement of Incident," stating that, during the pursuit and struggle, he suffered a left hamstring pull and back pain.

¶ 10                              A. Dr. William Galassi

¶ 11    Plaintiff testified that on September 25, 2017, five days after the incident, he was treated by Dr. William Galassi at Elmhurst Occupational Health. Galassi recommended that plaintiff follow up with physical therapy. Plaintiff testified that during that visit, he complained about his back. However, Galassi's records do not reflect any diagnosis or treatment relating to a back problem. On cross-examination, plaintiff admitted that Galassi provided treatment only for his left hamstring. Galassi saw plaintiff again about eight weeks after the incident, and he treated plaintiff for his left hamstring and knee pain.

¶ 12                              B. Dr. Robert Hurst

¶ 13    Also, on September 23, 2013, plaintiff's internist, Dr. Robert J. Hurst, treated plaintiff. Although plaintiff testified that he complained about his back, Hurst's records do not mention any back pain experienced by plaintiff as a result of the incident.

¶ 14                              C. Physical Therapy

¶ 15    Records from Athletico Physical Therapy (Athletico) reflect that plaintiff underwent physical therapy approximately 37 times from October 3, 2013, through January 6, 2014. At the hearing before the Board, plaintiff stated that he complained to Athletico during his initial evaluation about the discomfort in his left leg, left calf, left side, and back. The Athletico intake record confirms that plaintiff reported back pain. Plaintiff testified that, during his physical therapy, his left leg pain improved; however, his back pain became worse. Although the Athletico records do not reveal that plaintiff received any therapy or treatment to his lower back during his visits, they show a few instances where he complained of back pain during his treatment. For example, plaintiff complained of back pain on December 23, 2013, January 6, 2014, and March 5, 2014, when the therapist noted that plaintiff was discharged from physical therapy and directed to another provider for continued treatment of lower back symptoms.

## D. Dr. Bonnie McManus

On October 19, 2013, plaintiff was treated by Dr. Bonnie McManus at Elmhurst Occupational Health. Plaintiff testified that he complained about his back, but the records show no complaints about his back. McManus initially treated plaintiff for knee pain, which was the result of a kneecap twist during therapy.

## E. Dr. Christos Giannoulias

On November 26 and December 10, 2013, Dr. Christos Giannoulias of G&T Orthopedics and Sports Medicine treated plaintiff for knee and leg pain. Those records do not reflect any complaints relating to plaintiff's back.

## F. Dr. Jerome L. Kolavo

On January 31, 2014, the Village, per plaintiff's workers' compensation claim, referred plaintiff to Dr. Jerome L. Kolavo, a pain specialist. Plaintiff testified that he told Kolavo that he had severe back pain on the date of the incident when he left the scene in the ambulance. Kolavo treated plaintiff with injections for his back. Kolavo's records of January 31, 2014, show that plaintiff denied that he had any "significant" history of lower back pain prior to the incident. Kolavo recommended physical therapy for leg and back pain, and plaintiff underwent treatment by Momentum Physical Therapy, from approximately February 6 to May 6, 2014.

## G. Dr. Dalip Pelinkovic

Plaintiff testified that the therapists and the doctors had concluded from their notes that his back condition had plateaued. On September 23, 2014, about one year after the incident, plaintiff underwent surgery to his lower spine: an L4-5 transforaminal lumbar interbody fusion performed by Dr. Dalip Pelinkovic. Pelinkovic never opined that the incident made the back surgery necessary.

## H. Dr. Scott Player

The Village sent plaintiff to Dr. Scott Player for an independent medical examination. Player examined plaintiff on May 28, 2014, and reported that plaintiff denied "performing any other work activities or recreational pursuits." Plaintiff also denied having a history of lower back problems before the incident. Player observed plaintiff, without plaintiff's knowledge, as he exited his office and walked about 150 feet toward the parking lot. Player stated that plaintiff demonstrated a fluid and flowing gait, with no hesitation as he walked hand in hand with his wife away from the office building, but when plaintiff became aware of Player watching him, plaintiff demonstrated a hesitant gait that resolved when he was unaware of observation. When asked on cross-examination if he feigned a limp, plaintiff eventually replied "No." Player found that plaintiff's symptoms were no longer related to the incident. He did not recommend further treatment, including surgery, in connection with the incident. Player believed that plaintiff's complaints stemming from the incident involved soft tissue and should have been resolved within a few months.

Player saw plaintiff a second time and issued another report on September 14, 2015, after plaintiff had undergone back surgery. Player noted that plaintiff's "current subjective complaints include lower back and primarily left leg symptoms, '[w]hich are the same, if not

a hair worse' than preoperatively." In Player's opinion, based upon a reasonable degree of medical certainty, the surgery performed on September 27, 2014, by Pelinkovic was necessary and the result of the work incident. He opined that plaintiff's current pain in his lower back and left leg was related to the work incident, and there was no other cause of plaintiff's current pain and his previous need for surgery.

### I. Dr. Edward Goldberg

The Village requested that plaintiff be independently examined by Dr. Edward Goldberg of Midwest Orthopedics at Rush. He examined plaintiff on August 31, 2016, and on April 15, 2017, after reviewing his X-rays and diagnostic films, Goldberg reported that plaintiff denied any previous lumbar problems. Goldberg concluded that plaintiff's condition was not due to the work incident but due to his failed spinal fusion at L4-5. He disagreed with Pelinkovic that plaintiff's surgery was required to treat spondylolisthesis, finding no evidence of it where the surgery took place.

### J. Independent Medical Evaluations

Pursuant to section 3-115 of the Code (40 ILCS 5/3-115 (West 2018)), the Board selected Drs. Daniel G. Samo, Krzysztof Siemionow, and Tom D. Stanley to examine plaintiff. The physicians reviewed plaintiff's complete medical records, application for disability benefits, and injury reports.

### 1. Dr. Daniel G. Samo's Report

Samo's report, dated July 24, 2017, stated that it was certainly possible that plaintiff's disability was based on his subjective complaints of pain during various activities. Samo further stated that it was certainly possible that plaintiff would have pain following his fusion surgery. However, Samo believed that the various inconsistencies in plaintiff's history and physical findings made plaintiff's subjective complaints unreliable. Samo opined that if plaintiff was disabled by his pain, his unsuccessful back surgery was likely the cause. Samo did not know why plaintiff needed surgery at all and agreed with Goldberg's assessment. He noted that the initial injury was a hamstring strain that would not have been related to any of plaintiff's back problems, that plaintiff related that he started experiencing back pain at least two months *after* the incident, and that this started sometime in the winter of 2013. On cross-examination, plaintiff appeared to struggle with an answer as to why he told Samo that his back pain started two months *after* the incident, when he had told multiple other physicians that he experienced back pain immediately after the incident.

### 2. Dr. Krzysztof Siemionow's Report

Siemionow examined plaintiff on July 27, 2017. Plaintiff told Siemionow that he "felt severe pain in his back and in his left lower extremity as a result of this [incident] and eventually ended up being transferred to Elmhurst Hospital." Siemionow did not feel that plaintiff could perform full-duty police work and that "[t]hese restrictions would more likely than not be permanent." Siemionow did not offer any other opinions.

¶ 35                    3. Dr. Tom D. Stanley's Report

¶ 36    Stanley's July 20, 2017, report shows plaintiff stated that he "didn't have any back problems immediately prior to the work incident." Stanley asked him "about going to the emergency room for his lower back a few months before his work incident, and he had no recollection of it. In fact, he asked to see the records since he didn't believe that it happened." Stanley noted that plaintiff eventually underwent lower back surgery, which made the pain worse, and that plaintiff was offered additional surgery, but he did not want it. Stanley stated that plaintiff had chronic lower back pain, that plaintiff could not return to his job as a police officer, and that his disability was permanent. As to causation, Stanley noted the following in his report:

> "Dr Kolavo felt that [plaintiff's] symptoms could not be explained by his imaging findings. Dr. Pelinkovic determined that [plaintiff] had radiculopathy secondary to an L4-5 spondylolisthesis. I cannot rectify the discrepancy from the records that were available to me and therefore I cannot provide a definitive causation determination.

> Dr. Kolavo's records suggest that the injury diagnosis is a lumbar strain. If [plaintiff] sustained a lumbar strain, the fusion surgery would be for low back arthritis unrelated to the work event. Therefore[,] his current disability would also be unrelated to the work event.

> Dr. Pelinkovic's diagnosis of lumbar radiculopathy secondary to spondylolisthesis would represent an aggravation of preexisting low back arthritis necessitating surgery and resulting in the current disability."

¶ 37    Plaintiff testified that he continued to have pain in his back and that he did not believe that he could return to full service for the Department. After the injury in question, he had not performed any heavy-duty work, such as swinging a sledgehammer or lifting large, heavy objects.

¶ 38                         K. The Board's Decision

¶ 39    The Board concluded that the evidence established plaintiff had a preexisting history of lower back complaints and discomfort, but that these issues were neither caused nor exacerbated by the incident or any "act of duty," as necessary for establishing entitlement to "line-of-duty" disability pension benefits under section 3-114.1. Accordingly, the Board denied plaintiff line-of-duty disability pension benefits. The Board based its denial on its findings that plaintiff failed to report his back pain following the incident, he lacked credibility, and his back pain was due to current and preexisting issues unrelated to the incident. However, the Board determined that plaintiff was physically disabled from performing full-unrestricted duties of a police officer for the Department by reason of his lower back limitations and restrictions, entitling him to "not on duty" disability pension benefits pursuant to section 3-114.2 of the Code (40 ILCS 5/3-114.2 (West 2018)).

¶ 40    Plaintiff sought review of the Board's decision in the trial court, arguing that the factual findings were contrary to the manifest weight of the evidence. The trial court found that the decision of the Board was not against the manifest weight of the evidence and affirmed the decision of the Board. Plaintiff timely appeals.

¶ 41                                                    II. ANALYSIS

¶ 42        No one disputes that plaintiff is permanently disabled and that he suffered an injury on September 18, 2013, during an act of duty. The issue on review is whether plaintiff's lower back condition, which is the basis of his permanent disability, was caused or aggravated by the act of duty. This is a factual issue which the Board resolved against plaintiff. Plaintiff appeals this finding.

¶ 43        Under section 3-110 of the Administrative Review Law (735 ILCS 5/3-110 (West 2018)), the findings and conclusions of an administrative agency on questions of fact are held to be *prima facie* true and correct and must be affirmed unless they are contrary to the manifest weight of the evidence. *Thurow v. Police Pension Board*, 180 Ill. App. 3d 683, 686 (1989). "Factual findings are against the manifest weight of the evidence only where 'it is clearly evident the [agency] erred and should have reached the opposite conclusion.' " *Coyne v. Milan Police Pension Board*, 347 Ill. App. 3d 713, 721 (2004) (quoting *Board of Education of Round Lake Area Schools v. State Board of Education*, 292 Ill. App. 3d 101, 109 (1997)). "The mere fact that an opposite conclusion is reasonable or that the reviewing court might have ruled differently will not justify reversal of the administrative findings." *Turcol v. Pension Board of Trustees of Matteson Police Pension Fund*, 359 Ill. App. 3d 795, 801 (2005). "If the record contains evidence that supports the agency's decision, it should be upheld." *Id.*

¶ 44        To obtain a line-of-duty disability pension, a plaintiff must prove that the duty-related injury " 'is a causative factor contributing to the claimant's disability.' " *Scepurek v. Board of Trustees of the Northbrook Firefighters' Pension Fund*, 2014 IL App (1st) 131066, ¶ 27 (quoting *Luchesi v. Retirement Board of the Firemen's Annuity & Benefit Fund*, 333 Ill. App. 3d 543, 550 (2002)). A disability pension may be based upon the line-of-duty aggravation of a preexisting physical condition. See *Alm v. Lincolnshire Police Pension Board*, 352 Ill. App. 3d 595, 598 (2004). The duty-related incident need not be the originating or primary cause of the injury, but a sufficient nexus between the injury and the performance of the duty must exist. *Barber v. Board of Trustees of the Village of South Barrington Police Pension Fund*, 256 Ill. App. 3d 814, 818 (1993).

¶ 45        In rejecting plaintiff's claim that there existed a causal nexus between his lower back disability and the incident, the Board relied in part on plaintiff's failure to complain of lower back pain after the incident. The manifest weight of the evidence supports the Board's findings. The ambulance and emergency room reports did not identify any complaints by plaintiff about his back; they referred to pain only in plaintiff's leg and calf. There were no reports or records of back pain from the physicians who treated plaintiff shortly after the incident. Plaintiff did not receive physical therapy for his lower back during his 37 visits at Athletico. From September 18, 2013, through January 2014, plaintiff's treatment was solely for his leg injury.

¶ 46        The Occupational Health Services registration form, the Athletico intake, the "Employee Statement of Incident," and plaintiff's testimonial reference to reports of back pain in the "Illinois Form 45: Employer's First Report of Injury" show plaintiff as having reported that he injured his left leg, knee, foot, and back. However, his overall lack of reporting of his back pain to the earliest treaters supports the Board's finding that the on-duty incident was not a causative factor contributing to plaintiff's disability.

¶ 47        This case, like most disability pension cases, turns on the medical testimony. Here, there is additional evidence supporting the Board's finding that plaintiff's back issues were preexisting and that his disability was neither caused nor exacerbated by the incident or any

"act of duty" necessary for establishing a "line of duty" disability. Goldberg opined that (1) plaintiff's back problems were due to a failed spine surgery, (2) plaintiff had degenerative arthritis, (3) the surgery by Pelinkovic was unnecessary, and (4) any subsequent treatment would be due to the failed surgery—not because of the incident. Samo agreed with Goldberg's opinion. He stated that the initial injury was to plaintiff's hamstring and was not related to any back problems, which began two months after the incident. Stanley concluded that he could not definitively determine causation. He noted that Kolavo's records suggested that the injury diagnosis was a lumbar strain. However, if plaintiff sustained a lumbar strain, "the fusion surgery would be for lower back arthritis unrelated to the work event. Therefore[,] his current disability would also be unrelated to the work event."

¶ 48        As stated, Player initially found that plaintiff's symptoms were no longer related to the incident and he did not recommend further treatment. But, in a later report, Player stated, without explaining why, that plaintiff's surgery was necessitated by the incident. These conflicting reports justified the Board's rejection of Player's later opinion.

¶ 49        It was for the Board to determine which medical opinion was to be accepted. Faced with conflicting evidence, the Board, as the finder of fact, assessed the credibility of the documentary information and the witness testimony to determine the appropriate weight to give that evidence. *Marconi v. Chicago Heights Police Pension Board*, 225 Ill. 2d 497, 540 (2006). In this case, there was competent medical evidence—in the form of the medical opinions of Drs. Goldberg, Samo, and Stanley—supporting the Board's conclusion that plaintiff suffered from chronic lower back pain and disability and that his disability was not aggravated by the incident.

¶ 50        The Board also found that plaintiff was not credible. The Board focused on plaintiff's three prior documented incidents relative to his lower back, the last of which occurred a mere three months prior to the September 18, 2013, incident. During that treatment, plaintiff reported that he had been having lower back issues for 15 years. However, plaintiff denied prior back problems to Drs. Kolavo, Player, Stanley, Siemionow, and Goldberg. Furthermore, plaintiff was untruthful to his treaters regarding his work history. Plaintiff also gave conflicting reports to his treaters concerning his pain at the time of the incident. He reported to Drs. Goldberg and Siemionow that his back pain began immediately. But plaintiff told Samo that his pain did not start until two months later. We will not disturb the Board's credibility findings against plaintiff as they are based on the evidence. See *Lambert v. Downers Grove Fire Department Pension Board*, 2013 IL App (2d) 110824, ¶ 49 (McLaren, J., dissenting).

¶ 51        Plaintiff argues that this case is "strikingly similar" to *Devaney v. Board of Trustees of the Calumet City Police Pension Fund*, 398 Ill. App. 3d 1 (2010), a case in which the First District Appellate Court reversed the pension board's denial of a line-of-duty pension. We disagree.

¶ 52        In *Devaney*, the plaintiff had suffered from a preexisting degenerative disk disease prior to becoming a police officer. *Id.* at 2. After joining the police force, the plaintiff engaged in a physical altercation with a suspect. The plaintiff failed to initially report his back injury. *Id.* He was placed on work restrictions, and after surgery, he could not to return to full duty or serve in any other capacity as a police officer. *Id.* at 4. The plaintiff had an 18-year documented history of back problems, but he had been released to full duty and had performed his job as a police officer for two years before the incident. *Id.* at 10. Additionally, the three Board-selected doctors opined that the plaintiff's current back problems were due to the incident, and there

was no contrary medical evidence. *Id.* There was abundant medical evidence that the incident aggravated the plaintiff's degenerative disk disease.

¶ 53    In contrast, here, plaintiff's last documented occurrence of back pain was three months, not two years, before the incident. Plaintiff's debilitating back has never resolved. Also, two doctors opined that plaintiff's present condition was due to a failed surgery and not the incident. The only doctor with a contrary opinion had issued conflicting reports, which the Board was free to reject.

¶ 54    We find the holdings of *Covello v. Village of Schaumburg Firefighters' Pension Fund*, 2018 IL App (1st) 172350, and *Carrillo v. Park Ridge Firefighters' Pension Fund*, 2014 IL App (1st) 130656, support an affirmance of the Board's decision. In *Covello*, the plaintiff claimed he could no longer work as a firefighter because he suffered from post-traumatic stress disorder (PTSD), triggered by a specific duty-related incident. The Board found that the plaintiff did not meet his burden of establishing a causal connection between his preexisting conditions and a specific act of duty. *Covello*, 2018 IL App (1st) 172350, ¶ 48. Every doctor who examined the plaintiff agreed that he was disabled; however, they disagreed as to whether he suffered from PTSD due to an act of duty. *Id.* ¶ 45.

¶ 55    The Appellate Court, First District, affirmed, finding that the record amply supported the Board's factual finding that an act of duty was not a causative factor contributing to the plaintiff's permanent disability. *Id.* ¶ 10. The court noted that it "must affirm the Pension Board's decision when there is competent evidence in the record supporting the decision." *Id.* ¶ 48. The court further reasoned that the opinions of the independent evaluating doctors and the plaintiff's actions following the incident, which demonstrated no impact on either his physical or mental well-being, collectively supported the Board's decision awarding a nonduty disability pension. Furthermore, the court found that the Board was entitled to consider the plaintiff's misleading statements to certain evaluators; specifically, that he sought treatment only after the incident. *Id.* Accordingly, the court determined that the Board's finding—that the plaintiff did not meet his burden of establishing a causal connection between his preexisting conditions and a specific act of duty—was supported by the record and not against the manifest weight of the evidence. *Id.*

¶ 56    In *Carillo*, the plaintiff, a firefighter/paramedic, sought disability benefits based on degenerative arthritis of the left knee that rendered her unable to work. Prior to her employment, she had undergone two arthroscopic surgeries to her left knee during high school and college. *Carillo*, 2014 IL App (1st) 130656, ¶ 5. She began working in 2000 and claimed she injured her left knee on the job in 2002, 2005, and 2006, but she returned to work with no restrictions after each. *Id.* ¶¶ 7-9. She claimed disability in 2011. *Id.* ¶ 10.

¶ 57    The First District Appellate Court affirmed the Board's decision denying line-of-duty disability. In each of the three on-duty incidents cited by the plaintiff, the record showed that the plaintiff recovered and returned to full, unrestricted duty as a firefighter/paramedic. After the last of these incidents, she was able to perform her duties for nearly five years with no apparent problem until she began to spontaneously experience difficulties with her left knee. *Id.* ¶ 26. Moreover, the *Carillo* medical evidence was divided on the issue of causation, and the Board chose to believe the opinions of two doctors rather than the opinions of the remaining four doctors. Although the Board's decision to deny benefits reflected the minority viewpoint among the doctors who evaluated the plaintiff, the First District Appellate Court explicitly approved of the Board's reliance on the medical testimony from those two doctors. *Id.* ¶¶ 33-

34. The court reasoned that the plaintiff had the burden of proving that an on-duty incident either caused or aggravated her preexisting condition and that she failed to do so. *Id.* ¶ 27.

¶ 58 Here, plaintiff has similarly failed to meet his burden. There is no evidence in the record that his preexisting degeneration was made worse by the work incident. Plaintiff's medical records show that his condition was symptomatic a mere three months prior to the incident. Moreover, several of the independent medical examiners opined that plaintiff's condition appeared more consistent with symptomatic, chronic back pain. The Board was free to reject plaintiff's causal connection theory as lacking evidentiary support, given that (1) just three months before the incident, plaintiff's back was so painful that he went to the emergency room, but after the incident he did not mention that he was experiencing any back pain until the end of December 2013 at Athletico, (2) he did not seek treatment for back pain until February 2014, and (3) his back surgery was not necessitated by reason of the work-related incident or any act of duty.

¶ 59 Accordingly, we hold that the Board's finding that plaintiff did not meet his burden of establishing a causal connection between his preexisting condition and a specific act of duty was supported by the record and not against the manifest weight of the evidence. We affirm the Board's decision because there is competent evidence in the record supporting the decision.

¶ 60 III. CONCLUSION

¶ 61 For the preceding reasons, we affirm the decision of the Board and the judgment of the circuit court.

¶ 62 Affirmed.