# Illinois Official Reports

## Appellate Court

---

**Scepurek v. Board of Trustees of the Northbrook Firefighters' Pension Fund,**
**2014 IL App (1st) 131066**

---

| | |
|---|---|
| Appellate Court Caption | GABRIEL SCEPUREK, Plaintiff-Appellant, v. THE BOARD OF TRUSTEES OF THE NORTHBROOK FIREFIGHTERS' PENSION FUND, THOMAS SCHAUL, President, CLIFFORD WOODBURY, Secretary, HAL SANGER, Trustee, MARK NOLAN, Trustee, and JEFF ROWITZ, Trustee, Defendants-Appellees. |
| District & No. | First District, Second Division<br>Docket No. 1-13-1066 |
| Rule 23 Order filed<br>Rule 23 Order<br>withdrawn<br>Opinion filed | January 14, 2014<br><br>February 28, 2014<br>March 4, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The denial of plaintiff firefighter/paramedic's application for a duty disability pension by the board of trustees of defendant firefighters' pension fund was reversed, since the board found that plaintiff was permanently disabled based on his testimony and the medical evidence regarding the back injury he suffered while performing CPR in response to an emergency call, but then, despite any inconsistencies or contradictions in his testimony, the board found plaintiff incredible based on his courtroom demeanor, and based on those circumstances, including the absence of any medical evidence supporting the board's ultimate decision, its determination was contrary to the manifest weight of the evidence. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 12-CH-17755; the Hon. Sophia M. Hall, Judge, presiding. |

| | |
|---|---|
| Judgment | Reversed. |
| Counsel on Appeal | Corrine Watson, of Anthony G. Argeros, LLC, of Glenview, for appellant. |
| | Barbara A. Adams and Betsy L. Gates, both of Holland & Knight LLP, of Chicago, for appellees. |
| Panel | JUSTICE SIMON delivered the judgment of the court, with opinion. Presiding Justice Harris* and Justice Pierce concurred in the judgment and opinion. |

**OPINION**

INTRODUCTION

¶ 2    Plaintiff, Gabriel Scepurek, a lieutenant and firefighter/paramedic with the Village of Northbrook Fire Department for over 20 years, sued the Board of Trustees of the Northbrook Firefighters' Pension Fund (Board) alleging that the Board wrongfully denied his application for a duty disability pension on April 10, 2012, despite the fact that all medical opinions unanimously agreed that plaintiff suffered an on-the-job injury that left him unable to perform his regular duties and permanently disabled. The circuit court affirmed the Board's decision in an order dated March 8, 2013, and stated "for reasons stated on the record, the court affirms the Final Order and Decision of the defendants, Board of Trustees of the Northbrook Firefighters' Pension Fund and its members." There is no transcript of the March 8, 2013 court's proceedings in the original record. Plaintiff has not provided a transcript or summary of the court's stated reasons as a part of the record on appeal. The defendant attached the transcript of the circuit court's remarks from the March 8, 2013 proceedings as an appendix to its brief. "[T]he record on appeal cannot be supplemented by attaching documents to a brief or including them in an appendix." *McCarty v. Weatherford*, 362 Ill. App. 3d 308, 311 (2005). Neither party followed court rules and attempted to make the transcript a part of the official record on appeal. However, because this court reviews the Board's decision, not the circuit court's decision, this failure is not fatal to plaintiff's appeal.

¶ 3    Supreme Court Rule 329 (Ill. S. Ct. R. 329 (eff. Jan. 1, 2006)) allows the parties to "supplement the record on appeal to include omissions, correct errors, and settle controversies as to whether the record accurately reflects what occurred in the trial court." *Jones v. Ford*

_____

*Justice Patrick J. Quinn is deceased. Therefore, Presiding Justice Sheldon A. Harris will serve in his stead, and he has reviewed the briefs and concurs in this opinion.

*Motor Co.*, 347 Ill. App. 3d 176, 180 (2004). Although plaintiff's opening brief had already been filed before the defendant attached the transcript as an appendix to its responsive brief, we believe this supplement, even at this late date, does not unfairly prejudice the plaintiff, who was represented at the hearing. Consequently, we amend the record pursuant to Supreme Court Rule 329 to include the March 8, 2013 transcript of the circuit court's proceedings. Ill. S. Ct. R. 329 (eff. Jan. 1, 2006); *McCarty v. Weatherford*, 362 Ill. App. 3d 308, 313 (2005).

¶ 4        Plaintiff filed a timely notice of appeal on April 2, 2013. Ill. S. Ct. R. 303(a) (eff. June 4, 2008).

¶ 5                                    BACKGROUND

¶ 6        Plaintiff is employed by the Village of Northbrook as a firefighter/paramedic. He has been so employed since August 21, 1987 and currently holds the rank of lieutenant. By application dated November 16, 2010, plaintiff filed for duty-related disability pension benefits alleging that he is permanently disabled and unable to perform the duties of a firefighter/paramedic due to an on-the-job back injury he received on May 26, 2010 at 2:45 a.m., while performing cardiopulmonary resuscitation (CPR) on a patient on the floor of a bathroom in response to an emergency call. Plaintiff pursued his application for disability benefits by presenting evidence that the May 26, 2010 back injury is a stand-alone injury that was, at least in part, responsible for his permanent disability and/or that the May 25, 2010 back injury exacerbated many prior back injuries he received on the job while performing his firefighter/paramedic functions over the past 23-plus years.

¶ 7        Plaintiff testified to receiving prior duty-related back injuries on June 8, 1989; June 28, 1991; January 11, 1995; October 2, 1995; January 7, 1998; March 2, 1998; September 4, 2007; January 7, 2008; February 21, 2008; March 17, 2008; October 19, 2008; March 9, 2009; and July 13, 2009, along with submission of official reports.

¶ 8        As a result of the May 25, 2010 back injury, contemporaneous official reports were filed that documented the CPR incident that plaintiff was involved in that triggered his back injury. One such report, written by plaintiff's coworker, firefighter/paramedic Chris Goer, and additionally witnessed by firefighter/paramedic Marinier states:

> "E11 and A11 were called to 270 Skokie Blvd. for cardiac arrest. VA nursing staff was performing CPR on the pt. We took over CPR immediately. Pt. was lying on floor half way in bath room. When Lt. Scepurek was asked to assist w/CPR he jumped right in. *After several minutes of chest compressions he stated that his back was beginning to tighten up.* After aggressive resuscitative efforts to bring pt. back, the hospital ordered us to withdraw our efforts. At this time, Lt. Scepurek stood up from his crouched position. *He then complained of excruciating back pain.*" (Emphases added.)

¶ 9        Plaintiff admitted that although he was experiencing a great deal of back pain, he attempted to finish his shift, but could not due to the pain and was transported to the emergency room. He was prescribed pain relief medication and a muscle relaxant and ordered off work. On June 3, 2010, plaintiff returned to his treating orthopedic surgeon, Dr. Mark Lorenz, who is a member of a team of 25 orthopedic surgeons with Hinsdale Orthopedics group, because the prescribed pain relief and muscle relaxant medication from the emergency room visit had not provided any relief. Dr. Lorenz ordered X-rays, an MRI, a series of epidural steroid injections, an order

to remain off work and physical therapy sessions. After plaintiff was provided only limited and temporary relief, a new functional capacity evaluation (FCE) was ordered. Based on the test results, Dr. Lorenz advised the plaintiff that his career as a firefighter/paramedic was over.

¶ 10    On October 12, 2010, plaintiff sought out a second orthopedic surgeon's opinion from Dr. Howard An, who initially prescribed more pain relief medication and more physical therapy. On November 12, 2010, Dr. An concluded that there was no realistic chance for plaintiff to return to duty and, in fact, returning to duty would likely worsen his condition.

¶ 11    Plaintiff returned to Dr. Lorenz on January 3, 2011, who advised plaintiff that his restrictions should be considered permanent. Dr. Lorenz's report states as follows:

> "It is a medical and surgical certainty the patient's objective and subjective findings are consistent with a low back injury while working as a firefighter, April 17, 2008, lifting a cot, which caused aggravation, acutely, of underlying lumbar spondylosis and some chronic irritation with repetitive motion of his low back. This resolved with physical therapy treatment, time and rehabilitation. The patient was returned to work July 21, 2008, full duty as a fireman.
>
> The patient was able to work until May 25, 2010, where he was performing CPR as a fireman and paramedic, where he developed increasing back pain. He was diagnosed with a left L5-S1 acute disc herniation. He went through conservative care, continued to have ongoing pain. He underwent a functional capacity assessment showing a restriction of 32 pounds. He was unable to return as a firefighter. He was placed at maximum medical improvement January 3, 2011. At this point in time, patient needs no further intervention regarding his back or surgical intervention. He may continue with pain management, as needed."

¶ 12    Pursuant to section 3-115 of the Illinois Pension Code (Code) (40 ILCS 5/3-115 (West 2012)), the Board selected three physicians, Drs. Bernstein, Shapiro and Nolden, to perform independent medical evaluations of the plaintiff. Drs. Bernstein and Shapiro issued reports and concluded that the plaintiff was permanently disabled as a result of his on the job duties. Both doctors signed the Northbrook Firefighter's Pension Fund "Physician's Certification of Disability" and answered "yes" to the form's question that asked: "Is it your opinion that the applicant's disability is a result of sickness, accident or injury incurred in or resulting from the performance of an act of duty or from the cumulative effects of acts of duty?" Dr. Nolden did not sign a certification of plaintiff's disability, but submitted a report in which he deferred to the FCE findings which indicated plaintiff could not perform firefighter/paramedic duties any longer. All three physicians were scheduled by the Board to present in-person testimony. During Dr. Nolden's testimony, he clarified his report and his opinion regarding the genesis of plaintiff's current disability as follows:

> "Question: Would you agree with me that in this case, given the medical evidence we have from the films as well as the FCE data as well as the report of incident from the May of 2010, it is more likely than not true that the May of 2010 CPR incident was, in fact, a causal factor in aggravating or exacerbating the symptoms that Mr. Scepurek has had and have been objectively confirmed since that date?
>
> Answer by Dr. Nolden: Yes."

¶ 13    Despite the unanimous opinions of the plaintiff's treating physicians and those physicians hired by the Board, the Board did not discuss the conclusions reached by plaintiff's treating orthopedic surgeon or the above-quoted testimony of Dr. Nolden or the conclusions reached by Drs. Bernstein and Shapiro in its decision. Instead, the Board concluded that plaintiff's disability was permanent but was not in any way caused by any activity performed by him on the job.

¶ 14    The circuit court affirmed the Board's decision after briefing and a hearing.

¶ 15                              ANALYSIS
¶ 16                          A. Standard of Review
¶ 17    Judicial review pursuant to the Administrative Review Law (735 ILCS 5/3-101 (West 2008)) has this court review the Board's decision and not the circuit court's decision. *Lindemulder v. Board of Trustees of the Naperville Firefighters' Pension Fund*, 408 Ill. App. 3d 494, 500 (2011); *Provena Covenant Medical Center v. Department of Revenue*, 236 Ill. 2d 368, 385 (2010); *Phelan v. Village of LaGrange Park Police Pension Fund*, 327 Ill. App. 3d 527, 531 (2001). The Board's findings of fact are considered *prima facie* true and are not to be overturned unless they are against the manifest weight of the evidence. *Id.* (citing *Launius v. Board of Fire & Police Commissioners*, 151 Ill. 2d 419 (1992)). A factual determination by the Board is manifestly erroneous where the opposite conclusion is clear and evident. *City of Belvidere v. Illinois State Labor Relations Board*, 181 Ill. 2d 191, 205 (1998). Our supreme court has held that " 'it is not a court's function on administrative review to reweigh evidence or to make an independent determination of the facts.' [Citation.] When an administrative agency's factual findings are contested, the court will only ascertain whether such findings of fact are against the manifest weight of the evidence. [Citation.]" *Provena Covenant Medical Center v. Department of Revenue*, 236 Ill. 2d 368, 386-87 (2010). A finding is against the manifest weight of the evidence if " 'the opposite conclusion is clearly evident' " or the finding is " 'unreasonable, arbitrary, and not based upon any of the evidence.' " *Lyon v. Department of Children & Family Services*, 209 Ill. 2d 264, 271 (2004) (quoting *Snelson v. Kamm*, 204 Ill. 2d 1, 35 (2003)). If there is evidence contained in the administrative record that supports the agency's decision, this court should affirm the agency decision. *Robbins v. Board of Trustees of the Carbondale Police Pension Fund*, 177 Ill. 2d 533, 538 (1997).

¶ 18    The Board's decision denying pension benefits, while given deference, is subject to reversal if it is against the manifest weight of the evidence. *Kouzoukas v. Retirement Board of the Policemen's Annuity & Benefit Fund*, 234 Ill. 2d 446, 463-64 (2009) (reversal required where board's determination as to causation was against the manifest weight of the evidence).

¶ 19                          B. The Board's Decision
¶ 20    We begin by noting that the Pension Code (40 ILCS 5/1-101 *et seq*. (West 2012)) provides for different pension benefits depending on the circumstances of the incurred permanent disability. Plaintiff is seeking pension benefits for a permanent disability resulting, at least in part, from the performance of an act while in the line of duty. 40 ILCS 5/4-110 (West 2012). In the plaintiff's case, the Board stated that plaintiff would be eligible for either a nonduty disability pension or a reduced pension for time served, but the Board did not approve

plaintiff's application for a duty-related disability pension, the only pension plaintiff applied for arising out of his firemen's employment.

¶ 21   Section 4-105b of the Pension Code defines the term permanent disability as follows: " 'Permanent disability': any physical or mental disability that (1) can be expected to result in death, (2) has lasted for a continuous period of not less than 12 months, or (3) can be expected to last for a continuous period of not less than 12 months." 40 ILCS 5/4-105b (West 2010). Based on this definition and the evidence submitted in plaintiff's administrative case, the Board concluded that plaintiff is permanently disabled. This brings us to the issue of whether the Board's denial of plaintiff's duty-related pension application because it found that plaintiff's permanent disability was not caused, in whole or in part, by any on-the-job injury is a decision that we must either affirm or reverse.

¶ 22   Section 4-110 of the Pension Code states that a firefighter may receive a line-of-duty disability pension if he/she "as the result of sickness, accident or injury incurred in or resulting from the performance of an act of duty or from the cumulative effects of acts of duty, is found *** to be physically or mentally permanently disabled for service in the fire department." 40 ILCS 5/4-110 (West 2012).

¶ 23   In the plaintiff's case, the act of duty was the act of responding to a call of a citizen in need of CPR. In performing that act, plaintiff was injured. Despite the immediate onset of plaintiff's back problems following plaintiff's administration of CPR to a person in need, the Board found that plaintiff's permanent disability was not, in whole or in part, caused by the performance of that CPR act while on duty.

¶ 24   The issue of whether or not the evidence supports the denial of a plaintiff's application for a disability pension under the Pension Code is a question of fact that is analyzed by this reviewing court under the manifest weight of the evidence standard. *Kouzoukas v. Retirement Board of the Policemen's Annuity & Benefit Fund*, 234 Ill. 2d 446, 463 (2009). Factual findings are against the manifest weight of the evidence only where it is clearly evident that the Board erred and should have reached the opposite conclusion. *Turcol v. Pension Board of Trustees of Matteson Police Pension Fund*, 359 Ill. App. 3d 795, 801 (2005).

¶ 25   The parties are in agreement that plaintiff is permanently disabled and can no longer perform the duties of firefighter/paramedic. Therefore, the only question that is presented is whether the injury of May 25, 2010 when plaintiff was administering CPR contributed to plaintiff's permanent disability, or whether the plaintiff had completely recovered from that injury and had degenerative changes in his spine with sufficient symptoms to constitute the sole cause of his disability.

¶ 26   While we acknowledge that the Board's factual findings, including plaintiff's eligibility to receive disability pension benefits, are deemed " 'prima facie true and correct' " and should not be disturbed on appeal unless they are against the manifest weight of the evidence (*Marconi v. Chicago Heights Police Pension Board*, 225 Ill. 2d 497, 534 (2006) (*per curiam*) (quoting 735 ILCS 5/3-110 (West 2002))), we also acknowledge that the deference we afford the Board's decision is not without limitations. Our supreme court has observed that "[e]ven under the manifest weight standard *** the deference we afford the administrative agency's decision is not boundless." *Wade v. City of North Chicago Police Pension Board*, 226 Ill. 2d 485, 507 (2007); see also *Bowlin v. Murphysboro Firefighters Pension Board of Trustees*, 368 Ill. App. 3d 205, 210-12 (2006) ("our review cannot amount to a rubber stamp of the

- 6 -

proceedings below merely because the Board heard witnesses, reviewed records, and made the requisite findings"). "Even when the decision is supported by some evidence, which if undisputed would sustain the administrative finding, it is not sufficient if upon consideration of all the evidence the finding is against the manifest weight." *Id.* at 211-12.

¶ 27    In order to answer the question of whether the Board was correct, we must look to the evidence of plaintiff's disability. In doing so we acknowledge that it is well established that "a disability may result from multiple causes," and that in order to obtain a duty disability pension, "[a] claimant need not prove that a duty-related accident is the sole cause, or even the primary cause, of his disability." *Luchesi v. Retirement Board of the Firemen's Annuity & Benefit Fund*, 333 Ill. App. 3d 543, 550 (2002) (citing *Barber v. Board of Trustees of the Village of South Barrington Police Pension Fund*, 256 Ill. App. 3d 814, 818 (1993)). A plaintiff must only prove that the duty-related injury "is a causative factor contributing to the claimant's disability." *Luchesi v. Retirement Board of the Firemen's Annuity & Benefit Fund*, 333 Ill. App. 3d 543, 550 (2002) (citing *Hart Carter Co. v. Industrial Comm'n*, 89 Ill. 2d 487, 494 (1982)). "[A] disability pension may be based upon the line-of-duty aggravation of a preexisting condition." *Wade v. City of North Chicago Police Pension Board*, 226 Ill. 2d 485, 505 (2007). " 'There is no requirement that the duty-related incident be the originating or primary cause of injury, although a sufficient nexus between the injury and the performance of the duty must exist.' " *Id.* (quoting *Barber v. Board of Trustees of the Village of South Barrington Police Pension Fund*, 256 Ill. App. 3d 814, 818 (1993)). This court has repeatedly held that "plaintiff need not prove that an injury received on duty was the sole cause of his disability; the injury need only have contributed to the disability." *Wilfert v. Retirement Board of the Firemen's Annuity & Benefit Fund*, 263 Ill. App. 3d 539, 543 (1994); *Alm v. Lincolnshire Police Pension Board*, 352 Ill. App. 3d 595, 598 (2004); *Olson v. City of Wheaton Police Pension Board*, 153 Ill. App. 3d 595, 598 (1987).

¶ 28    This is not a case where the number of physicians who concluded that the plaintiff's permanently disabled is a result of an on-the-job injury is greater than the number of physicians who came to the opposite conclusion. All physicians who rendered opinions in this case were in agreement. Therefore, the cases that hold that where a higher number of physicians who support a plaintiff's position as opposed to the number of physicians who came to an opposite conclusion is insufficient to overturn a board's decision to deny pension benefits are not directly applicable to this case. *Marconi v. Chicago Heights Police Pension Board*, 225 Ill. 2d 497, 540-42 (2006) (*per curiam*) (board's decision denying disability pension benefits upheld even though only one in four psychiatrists who examined the plaintiff concluded he was not qualified to receive benefits); *Trettenero v. Police Pension Fund*, 268 Ill. App. 3d 58 (1994) (board's decision denying benefits was not against the manifest weight of the evidence even though only two out of seven psychiatrists supported that decision). However, our courts have found a pension board's decision to be against the manifest weight of the evidence where the agency decision selectively relies heavily on one medical expert's testimony to the exclusion of other medical opinions and medical documentation. *Wade v. City of North Chicago Police Pension Board*, 226 Ill. 2d 485 (2007).

¶ 29    There is nothing in the record that could support the Board's conclusion that plaintiff fully recovered from the injury he received on May 25, 2010 during his on-duty performance of CPR on a citizen, so as to exclude this accident as a contributing factor of his permanent

disability. Plaintiff was never medically cleared to return to his duties as a firefighter/paramedic. In fact, all physicians, including the Board's own independent medical evaluators, concluded that the May 25, 2010 incident, at least in part, contributed to plaintiff's permanent disability.

¶ 30    The Board nevertheless found that the petitioner's on-duty May 25, 2010 accident did not contribute at all to plaintiff's permanent disability and instead determined that plaintiff's sole cause for the permanently disabling condition he finds himself in is the preexisting degenerative changes in his lower back. This was the Board's conclusion despite the fact that no physician dismissed the May 25, 2010 incident as a contributing factor. In our view, to dismiss the May 25, 2010 CPR incident as a causative factor would be to defy common sense. In other words, given the evidence in this case, the Board was totally unrealistic in its finding.

¶ 31    Ultimately, the record on appeal reveals that the Board was presented with medical evidence that was not conflicting regarding either the permanent nature of plaintiff's disability or that the onset of plaintiff's medical condition was precipitated by an on-the-job injury he suffered immediately prior to the onset of his debilitating condition. It is the function of the Board as the fact finder to assess the credibility of the witnesses and documentary evidence and determine the weight to be afforded each when it is faced with conflicting medical evidence. *Marconi v. Chicago Heights Police Pension Board*, 225 Ill. 2d 497, 540 (2006) (*per curiam*). However, in the instant case, there is no real conflict in the medical evidence.

¶ 32    This is not a case where the Board could have come to the conclusion that the plaintiff's permanent disability was not caused by the on-the-job injury based on the medical evidence and testimony it heard or that another conclusion other than the one presented by all physicians in this case is reasonable. *Village of Stickney v. Board of Trustees of the Police Pension Fund*, 363 Ill. App. 3d 58, 66 (2005) (a board's decision should be affirmed only so long as there is some medical evidence to support their conclusion); *Marconi v. Chicago Heights Police Pension Board*, 225 Ill. 2d 497, 540 (2006).

¶ 33    Clearly, in this case, the plaintiff's treating physicians and the three independent medical examiners who were hired by the Board were generally in agreement that plaintiff's permanent disability was caused, in whole or in part, by the on-the-job injury he suffered. In this case, the Board's finding that plaintiff's permanent disability was not caused by the on-the-job injury is clearly one that meets the definition of a finding that is " 'unreasonably arbitrary, and not based upon any of the evidence.' " *Lyon v. Department of Child & Family Services*, 209 Ill. 2d 264, 271 (2004) (quoting *Snelson v. Kamm*, 204 Ill. 2d 1, 35 (2003)).

¶ 34    This case is not one where the medical evidence was inconclusive or where only a majority of physicians supported plaintiff's disability pension application. The Board appears to have improperly disregarded the opinions of all the physicians who presented medical evidence and all documentary medical evidence and rendered its own medical opinion as to whether plaintiff's permanent disability was a result of his on-the-job injury. The Board's findings do not explain how it could come to such a conclusion despite the fact that the onset of plaintiff's disability immediately followed the on-the-job injury he suffered. Instead, the Board made findings that plaintiff was not a credible witness when discussing his on-the-job back injuries because he read from the forms that documented his back injuries which dated back to 1989 and despite the medical opinions of four doctors who found plaintiff a credible patient and relied on plaintiff's statements in coming to their conclusions. No medical professional in this

- 8 -

case even hinted that plaintiff was malingering. The Board observed that plaintiff did not appear to have difficulty sitting through an uninterrupted Board hearing of 1 hour and 45 minutes. However, this observation by the Board goes to the question of disability, not causation. The Board found plaintiff permanently disabled. As to plaintiff's credibility, one of the independent medical doctors the Board hired commented about plaintiff in his report as follows: "I find Mr. Gabriel Scepurek to be extremely pleasant and candid. His two functional capacity evaluations both had valid results, which goes along with my assessment that he is an extremely honest person who unfortunately now has a permanent injury to his lumbar spine."

¶ 35    The Board's decision substituted its lay assumptions and engaged in conjecture in making its determination that plaintiff's permanent disability was caused solely by degenerative changes in his lumbar spine, rather than carefully evaluating the conclusions of each of the doctors who opined that plaintiff's disability was the result, at least in part, of an on-the-job injury. If the Board's decision were allowed to stand, then no older firefighter/paramedic who has degenerative changes in his/her skeletal system (that the physicians testified all older people have) would be able to establish an on-the-job injury. While credibility determinations are generally within the province of the Board, the Board cannot piecemeal tear apart a plaintiff's credibility on one issue while finding him credible on all other issues when plaintiff's same statements are supported by documentary evidence and are found credible by all medical personnel as in this case. This appears to be a case where plaintiff's testimony as to the onset of his disability from the injury he experienced while working and the permanency of his disability are inextricably intertwined. The Board's reliance, in part, on plaintiff's testimony and all medical evidence to find plaintiff permanently disabled, but then to find plaintiff incredible based merely on his courtroom demeanor, without additionally finding significant contradictions and/or inconsistencies in his testimony as it related to the medical evidence presented, supports the conclusion that the Board's decision is against the manifest weight of the evidence. *Cinkus v. Village of Stickney Municipal Officers Electoral Board*, 228 Ill. 2d 200, 210 (2008); *City of Belvidere v. Illinois State Labor Relations Board*, 181 Ill. 2d 191, 205 (1998). There is no medical evidence that could reasonably be construed to be supportive of the Board's decision that would justify this court affirming it on appeal. *Robbins v. Board of Trustees of the Carbondale Police Pension Fund*, 177 Ill. 2d 533, 538 (1997).

¶ 36    Under the facts of this case, this court finds that the plaintiff's back was injured on May 25, 2010 and that the Board's decision that this injury played no role whatsoever in his current permanent disability from back problems was contrary to the manifest weight of the evidence. *Kouzoukas v. Retirement Board of the Policemen's Annuity & Benefit Fund*, 234 Ill. 2d 446, 464 (2009). "A reviewing court will not hesitate to grant relief where the record does not show evidentiary support for the agency's determination." *Bowlin v. Murphysboro Firefighters Pension Board of Trustees*, 368 Ill. App. 3d 205, 210-12 (2006).

¶ 37                                                    CONCLUSION

¶ 38    This court reverses the decision of the Board which denied plaintiff's application for duty-related pension benefits where it found that plaintiff's permanent disability was not caused, even in part, by an on-the-job injury because it is not supported by the manifest weight of the evidence.

¶ 39    Reversed.