# Illinois Official Reports

## Appellate Court

---

### *Covello v. Village of Schaumburg Firefighters' Pension Fund*, 2018 IL App (1st) 172350

---

| | |
|---|---|
| Appellate Court Caption | STEVEN COVELLO, Plaintiff-Appellant, v. THE VILLAGE OF SCHAUMBURG FIREFIGHTERS' PENSION FUND, THE BOARD OF TRUSTEES OF THE VILLAGE OF SCHAUMBURG FIREFIGHTERS' PENSION FUND, and THE VILLAGE OF SCHAUMBURG, Defendants-Appellees. |
| District & No. | First District, Second Division<br>Docket No. 1-17-2350 |
| Filed | September 25, 2018 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 2016-CH-06945; the Hon. Anna Helen Demacopoulos, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Thomas Duda, of Palatine, for appellant.<br><br>Collins & Radja, of Naperville (Thomas S. Radja Jr., of counsel), for appellee Village of Schaumburg Firefighters' Pension Fund and Board of Trustees of the Village of Schaumburg Firefighters' Pension Fund.<br><br>Clark Baird Smith, LLP, of Rosemont (Yvette A. Heintzelman and Roxana M. Underwood, of counsel), for other appellee. |

Panel                        PRESIDING JUSTICE MASON delivered the judgment of the court, with opinion.
Justices Pucinski and Walker concurred in the judgment and opinion.

## OPINION

¶ 1        In this administrative review action, plaintiff-appellant, Steven Covello, seeks review of a final decision denying line-of-duty disability pension benefits entered by defendants-appellees, the Village of Schaumburg Firefighters' Pension Fund and the Board of Trustees of the Village of Schaumburg Firefighters' Pension Fund (collectively referred to as Pension Board). Covello applied for line-of-duty or, in the alternative, nonduty disability pension benefits claiming that he could no longer work as a firefighter for defendant-appellee, the Village of Schaumburg (Village), because he suffered from post-traumatic stress disorder (PTSD) triggered by a specific duty-related incident. The Pension Board found Covello permanently disabled and entitled to a nonduty disability pension based on his preexisting physical and psychological conditions, which included anxiety and depression. But because Covello failed to establish a causal connection between his disability and an act of duty, the Pension Board denied line-of-duty disability pension benefits. Covello sought review of the Pension Board's decision with the circuit court, and the circuit court affirmed.

¶ 2        Here, Covello claims the Pension Board applied the wrong standard in weighing the evidence because the standard is not whether an act of duty was the sole or primary cause of his disability but whether an act of duty was a contributing cause of his disability. Covello also claims that the Pension Board failed to rule on his motion requesting to modify the effective date of his disability pension before issuing its final written decision.

¶ 3        Finding no error, we affirm the Pension Board's award of nonduty disability benefits with an effective date of December 5, 2014.

¶ 4                                 BACKGROUND

¶ 5        On February 3, 1995, the Village hired Covello as a firefighter/paramedic in the Village's fire department. When Covello was hired, he passed a physical and psychological exam required by the Village. Before beginning his career as a firefighter with the Village, Covello had never received psychological or psychiatric treatment for any condition.

¶ 6        Beginning in October 2007 and throughout the remainder of Covello's career as a firefighter, Dr. Thomas Dennison, a psychiatrist, treated Covello for anxiety, depression, irritable bowel syndrome (IBS), gastroesophageal reflux disease (GERD), hoarding, stuttering, and obsessive compulsive disorder. Dr. Dennison treated Covello's IBS, GERD, and stuttering conditions with medicine and also prescribed an antidepressant. Each of Covello's treatment sessions with Dr. Dennison lasted 15 minutes, which would include any necessary modifications to his medicine. Covello would generally see Dr. Dennison anywhere from once a month to once every three months depending on his level of stress and anxiety.

¶ 7        During the first five years of treatment, Covello did not discuss any issues involving work with Dr. Dennison, and he did not express any work-related anxiety. In fact, during a treatment session in 2009, Covello mentioned that his fellow firefighters were his major support system.

During these sessions, Covello instead talked about various personal issues, including his relationship with his son, his broken engagement, his mother's death, as well as his hoarding tendencies, which grew worse over the years. Because of his numerous issues, Dr. Dennison had over the years recommended Covello see a counselor, but Covello failed to follow this advice.

¶ 8        Once under Dr. Dennison's care and as early as 2007, Covello took intermittent time off under the Family and Medical Leave Act of 1993 (FMLA) (29 U.S.C. § 2601 *et seq.* (2000)) due to his anxiety issues. In 2008, Covello took FMLA days on January 1, January 29, February 7, March 20, August 2, and December 27.

¶ 9        Over his 18-year career as a firefighter, Covello responded to numerous calls involving gruesome injuries, and some of the victims that he attempted to save died. Generally, Covello did not know the victims personally. But on November 1, 2008, Covello responded to an "officer down" call that came in at around 11 p.m. involving Officer Frank Russo of the Village's police department. Because both Covello and Officer Russo worked for the Village, they got to know each other when they responded to the same calls, but they did not socialize outside of work. On November 1, when Covello arrived at the scene in the ambulance, he saw the other police officers standing around and not attempting to perform CPR on Officer Russo, which Covello found distressing. Covello was also upset that the fire department's engine did not arrive at the scene at the same time the ambulance crew did to assist with the call. Covello learned that Officer Russo suffered a heart attack while pursuing a fleeing suspect. As the paramedic-in-charge, Covello performed CPR on Officer Russo, but treating him was difficult because Officer Russo was a very large man, weighing about 300 pounds. Covello transported Officer Russo in the ambulance to the hospital where he was later pronounced dead. Covello completed the rest of his shift that day.

¶ 10       Four years later on January 13, 2013, while responding to what Covello mistakenly believed was an emergency call early in the morning, he rushed to put his boots on and strained himself pulling up his partially zipped boot. Covello heard a pop in his abdomen and knew something was wrong, but he could still function. Covello saw a doctor within a few days, who diagnosed him with a hernia in the umbilical region that required surgery. Covello's hernia was a preexisting condition that had bothered him off and on for many years, but that he had left untreated.

¶ 11       After receiving the hernia diagnosis, Covello called the deputy chief to inform him of his condition. Covello also informed the deputy chief of his other medical conditions (GERD, IBS, esophageal spasms) but did not mention any work-related anxiety. The Village placed Covello on medical leave as of February 1, 2013. Covello did not return to work in any capacity after aggravating his hernia on January 13, 2013. Covello's doctors refused to perform hernia surgery until he completed an antibiotic treatment to clear up an infected skin condition and addressed his existing psychological issues. On May 3, 2013, the Village informed Covello that he had exhausted all 12 weeks of his available FMLA time and provided him with the following options: (1) resign due to his inability to return to work, (2) request a non-FMLA leave of absence, or (3) apply for a disability pension with the Pension Board. The Village also informed Covello that if he did not communicate his decision by May 29, 2013, the Village would assume he was resigning his position and his employment would be terminated. Because he had exhausted all of his paid leave by early April 2013, Covello stopped receiving a salary from the Village at that time.

¶ 12    By June 2013, Covello's stuttering became more significant. A woman Covello dated briefly (from January 2013 to June 2013) noticed that his stuttering bothered him and she suggested to Covello that he should seek treatment from Dr. Donna Ripley, a clinical psychologist, who had treated her in the past. In June 2013, Covello began treatment with Dr. Ripley, who helped him work though his anxiety issues. Dr. Ripley diagnosed Covello with PTSD triggered by the incident involving Officer Russo.

¶ 13    Covello was eventually cleared for surgery and had his hernia repaired on October 30, 2013. On October 25, 2013, days before Covello's hernia surgery, he filed an application for line-of-duty disability pension benefits under the Firefighters' Pension Fund of the Illinois Pension Code (40 ILCS 5/4-110 (West 2012)). He alternatively applied for nonduty disability pension benefits (40 ILCS 5/4-111 (West 2012)). On his disability application, Covello listed November 1, 2008, the date he responded to the call involving Officer Russo as his date of injury. Covello listed PTSD as the reason for his disability. The Village was allowed to intervene in the proceedings based on its status as Covello's employer and a fiduciary charged with the proper expenditure of pension funds.

¶ 14    Under the Pension Code, a firefighter is entitled to line-of-duty disability pension benefits if, "as the result of sickness, accident or injury *incurred in or resulting from the performance of an act of duty or from the cumulative effects of acts of duty*," the firefighter is found physically or mentally permanently disabled for service in the fire department. (Emphasis added.) 40 ILCS 5/4-110 (West 2012). A line-of-duty disability pension entitles a firefighter

> "to a disability pension equal to the greater of (1) 65% of the monthly salary attached to the rank held by him or her in the fire department at the date he or she is removed from the municipality's fire department payroll or (2) the retirement pension that the firefighter would be eligible to receive if he or she retired (but not including any automatic annual increase in that retirement pension)." 40 ILCS 5/4-110 (West 2012).

A firefighter is considered "on duty" while on any assignment approved by the chief of the fire department and the assignment relates to the fire protection service of the municipality. 40 ILCS 5/4-110 (West 2012).

¶ 15    A firefighter is entitled to nonduty disability pension benefits under the Pension Code if he or she is found to be physically or mentally permanently disabled "as a result of *any cause other than an act of duty*." (Emphasis added.) 40 ILCS 5/4-111 (West 2012). A firefighter awarded a nonduty disability pension receives "50% of the monthly salary attached to the rank held by the firefighter in the fire service at the date he or she is removed from the municipality's fire department payroll." 40 ILCS 5/4-111 (West 2012).

¶ 16    In anticipation of a hearing on Covello's disability application and as provided under the Pension Code (40 ILCS 5/4-112 (West 2012)), the Pension Board selected the following three doctors to evaluate Covello and make an independent determination of disability based on their expert psychiatric opinion: (1) Robert Reff, M.D.; (2) Richard P. Harris, M.D.; and (3) Steven Weine, M.D. The Pension Board also requested a forensic psychological evaluation by Eric Ostrov, J.D., Ph.D.; Dr. Ripley and Dr. Dennison, who had been treating Covello for various psychological issues, also provided their opinions regarding Covello's disability. As discussed below, in their expert medical opinion, every treating and evaluating doctor concluded that Covello was permanently disabled and unable to perform the assigned duties of a firefighter. But there was disagreement among the doctors as to whether Covello suffered from PTSD due to an act of duty. Each doctor submitted a written report and elaborated on their opinions

during their respective evidence depositions, which we summarize.

## Dr. Ripley

Dr. Ripley began treating Covello in June 2013. From June 2013 to December 2013, Covello saw Dr. Ripley generally once to twice a week for an hour or two. Covello chose to see Dr. Ripley because she was a PTSD specialist. Covello told Dr. Ripley about reoccurring nightmares that he had about being on the scene of different calls. Dr. Ripley found that Covello suffered from avoidance tendencies and he initially had trouble talking about the incident involving Officer Russo. Dr. Ripley diagnosed Covello with PTSD. In reaching her PTSD diagnosis, Dr. Ripley did not administer any formal tests or assessments; rather, she based her opinion on her observations and what Covello told her during the treatment sessions. Dr. Ripley opined that Covello's traumatic disorder and disability were caused by the call involving Officer Russo.

## Dr. Dennison

Even though Dr. Dennison had been treating Covello since October 2007, it was not until June 2013 that Covello mentioned any issues involving his work duties or the workplace. In fact, Dr. Dennison only learned of the 2008 call involving Officer Russo in June 2013, after Covello reported post-traumatic type symptoms relating to that call. Dr. Dennison treated Covello for a variety of anxiety and depression issues, but he did not treat Covello for PTSD. Dr. Dennison noticed that Covello's condition worsened when his hernia surgery was delayed. Because Covello lost his support system through his fellow firefighters, and he began obsessing over the Officer Russo call, Dr. Dennison noted that Covello's time off following his hernia and his ongoing depression contributed to his PTSD-type symptoms. Dr. Dennison also noted that from May 2013 to October 2013, Covello's stutter became more pronounced, he could not focus, he was an emotional wreck, and he could not concentrate. In Dr. Dennison's opinion, the Officer Russo call was not necessarily a cause of Covello's disability, but it aggravated his condition after he could no longer work while waiting for hernia surgery.

## Dr. Ostrov

Dr. Ostrov, a clinical psychologist, evaluated Covello on February 17, 2014. Based on his evaluation, Dr. Ostrov diagnosed Covello with (1) hoarding disorder, (2) generalized anxiety disorder with panic attacks, (3) dysthymia, and (4) PTSD. Dr. Ostrov performed assessment tests on Covello, which demonstrated that he experienced symptoms of posttraumatic stress, somatization (which occurs when physical symptoms, *i.e.*, pain or nausea, manifest from psychological issues), a high degree of anxiety, depression, traumatic intrusive experiences, and suicidal ideation. Dr. Ostrov opined that Covello's work experiences may have contributed to his emotional difficulties but that his work experiences could not be the sole or primary reason for his health condition. Dr. Ostrov also opined that Covello's medical records did not support a claim that the call involving Officer Russo was a prime cause of his current psychological problems.

## Dr. Harris

Dr. Harris conducted a psychiatric evaluation of Covello on April 22, 2014. Dr. Harris did not believe that the call involving Officer Russo was the primary cause of Covello's disability. Dr. Harris based his opinion on Covello's lengthy history of mental health problems, consisting of anxiety, depression, hoarding, and interpersonal problems. Dr. Harris noted that Covello worked without issue for a number of years after the Officer Russo call, and there was no record that the call caused obvious problems in Covello's functioning or thinking. Dr. Harris opined that Covello suffered from significant psychological problems, but he did not believe that the whole picture was consistent with PTSD as the cause. Dr. Harris also believed that Covello's on-duty acts may have contributed to his emotional difficulties, but they were not the primary reason for his problems. Ultimately, Dr. Harris opined that Covello's disability was nonduty.

## Dr. Reff

Dr. Reff conducted a psychiatric evaluation of Covello on May 6, 2014. Dr. Reff believed Covello suffered from severe and debilitating major depression and panic disorder, which limited his ability to focus or attend to critical or time sensitive situations. Covello admitted to Dr. Reff that he had multiple non-work related issues that created anxiety for him. Covello also told Dr. Reff that he began seeing Dr. Dennison after the incident involving Officer Russo. Dr. Reff did not believe that Covello was suffering from PTSD. Regarding the impact of Officer Russo's death on Covello, Dr. Reff stated that it was not possible to state with any reasonable degree of medical psychiatric certainty whether the call involving Officer Russo, or any specific event or events, actually caused his psychiatric conditions because Covello continued to work at his job for more than four years after Officer Russo's death. Dr. Reff opined that Covello's psychiatric conditions were more likely than not a consequence of a constellation of factors and their cumulative effect. Dr. Reff could not identify a specific incident at work as the primary cause of Covello's disability but believed his work experiences were a causative factor and aggravated his underlying preexisting psychiatric conditions. With a reasonable degree of medical certainty, Dr. Reff opined that, considering all the issues Covello faced, Covello's condition would have or could have occurred had he not been a firefighter.

## Dr. Weine

Dr. Weine conducted a psychiatric evaluation of Covello on May 7, 2014. Covello denied receiving treatment for his mental health issues before the incident involving Officer Russo, although, in fact, Covello began seeing Dr. Dennison in 2007. Dr. Weine diagnosed Covello with (1) major depressive disorder (in partial remission), (2) partial PTSD, (3) generalized anxiety disorder, (4) compulsive disorder, and (5) stuttering. According to Dr. Weine, Covello had suffered from anxiety since at least 2006 and depression since at least 2010. Dr. Weine believed that Covello's conditions were likely caused by the high stress and the cumulative trauma exposure of his work as a firefighter. In particular, Dr. Weine opined that general workplace stress and his exposure to traumatic events were a significant causative factor in the worsening of his conditions over time. Dr. Weine thought Dr. Ripley overemphasized PTSD and found Dr. Dennison's opinion more persuasive that Covello exhibited posttraumatic stress symptoms but not the full criteria of PTSD.

¶ 29                              Proceedings Before the Pension Board

¶ 30        The Pension Board held Covello's disability hearing on November 20, 2015, and January 22, 2016. During the hearing, Covello recounted several on-duty calls involving motorcycle and automobile accidents that he found traumatic. In one accident, a woman in an automobile was crushed by a semi-truck, and he had to put her scalp back together. Covello blamed himself and felt responsible when a patient did not survive.

¶ 31        Regarding the Officer Russo call, Covello stated that the specifics of the call were a blur because it happened so long ago and he had tried to forget about it. According to Covello, it took him five years to talk about the anxiety he experienced from that incident, which he attributed to finally getting treatment to deal with his issues. But Covello indicated that he blamed himself about how he handled the call. He blamed himself for (1) not ensuring that the ambulance and engine left the firehouse together to respond to the call and (2) not having the police officers at the scene start CPR so he could get the cot and get Officer Russo in the ambulance instead of working on him on the ground. Covello developed a lot of anger from that incident, which manifested as animosity towards people. He was angry at himself, at his coworkers, and at the way everything happened during that call. Covello did not speak to his supervisors about any issues he had involving that incident, though he did talk to a fellow firefighter frequently expressing his work-related anxiety, and, in particular, anxiety relating to that call. Regardless of any anxiety he was experiencing, Covello stated that he always completed his work shifts, including the shift when he responded to the incident involving Officer Russo. Likewise, Covello did not take an extended period of time off after the Officer Russo call. In fact, Covello never took time off due to his experiences responding to a call.

¶ 32        During the hearing, Covello's fellow firefighter, Nicholas Rieger, stated that he began working as a firefighter for the Village about two weeks after Covello and that they worked the same shift and on the same truck for about 10 years. Covello discussed the call involving Officer Russo often with Rieger during the month following the incident. After that incident, Rieger noticed that Covello became angry, frustrated, and more irritable when responding to calls.

¶ 33        Frederick Scholpp, deputy chief of the Village's fire department, and William Spencer, deputy chief of operations for the Village's fire department, both confirmed to the Pension Board that they were not aware of a situation where Covello was unable to complete a particular work shift or perform certain work duties. Both Scholpp and Spencer also stated that Covello never spoke to them about any friendship he had with Officer Russo nor did Covello talk to them about any thoughts, concerns, or problems that he had regarding Officer Russo's death. In fact, Covello never mentioned to either Scholpp or Spencer that he was suffering from stress or anxiety because of any work-related call. Likewise, Covello never requested time off because of or following a call. And Covello continued to receive favorable annual performance evaluations from 2008 through 2012.

¶ 34        At the end of the hearing, the Pension Board deliberated in a brief executive session. Following the executive session, the Pension Board granted Covello a nonduty disability pension, with the salary and effective date to be determined and included in its final written decision. Regarding the effective date, the Pension Board noted that Covello tendered a check to pay for creditable service for the time period that he was on sick leave and not receiving a

disability pension, which was through December 5, 2014.[1] Covello's lawyer initially argued to the Pension Board that an earlier effective date would entitle Covello to a lump sum payment for past due pension payments. But when Pension Board members explained that the December 2014 effective date would ultimately result in a higher pension benefit due to interim pay increases and after consulting with his client, Covello's lawyer told the Pension Board that Covello preferred the pension's effective date to be in December 2014.

¶ 35    On March 3, 2016, after the hearing, but before the Pension Board issued its written decision, Covello filed a motion to modify the disability pension's effective date from December 5, 2014 (total creditable service date), to February 13, 2015, or, in the alternative, April 2, 2015, based on an e-mail from the Village indicating he could purchase creditable service through that date. Covello offered to purchase an additional 10 weeks of service credit to reach 20 years of service, which would make the pension's effective date February 13, 2015. Covello's pension would be fully vested with 20 years of service.

¶ 36    On April 20, 2016, the Pension Board issued its written decision and awarded Covello a nonduty disability pension of 50% of his salary and rank effective December 5, 2014, based on his total creditable service. The Pension Board explained that it did not find a link between Covello's disability and an act of duty but did find that he was permanently disabled from service as a result of conditions that were not caused by any act of duty. In its written decision, the Pension Board did not expressly rule on Covello's motion to modify the disability pension's effective date.

¶ 37    On May 19, 2016, Covello filed a complaint for administrative review under the Illinois Administrative Review Law (735 ILCS 5/3-101 *et seq.* (West 2012)), requesting the circuit court to find that he was entitled to line-of-duty disability pension benefits and to grant his motion that was not expressly ruled on by the Pension Board to modify the pension's effective date from December 5, 2014, to February 13, 2015. The circuit court affirmed the Pension Board's finding that Covello was not entitled to a duty disability pension because he failed to demonstrate that an on-duty act contributed to his permanent disability. The circuit court also found that there was no basis in the law requiring the Pension Board to accept his offer to purchase an additional 10 weeks of creditable service to change the pension's effective date to February 13, 2015. Covello now seeks review of the Pension Board's denial of line-of-duty disability pension benefits and the effective date of his pension.

¶ 38                                    ANALYSIS

¶ 39    Under the Pension Code, the provisions of the Administrative Review Law (735 ILCS 5/3-101 *et seq.* (West 2012)) govern judicial review of final administrative decisions of the Pension Board. 40 ILCS 5/4-139 (West 2012).

¶ 40    It is well-established that in administrative review cases, we review the administrative agency's decision, not the determination of the circuit court. *Exelon Corp. v. Department of Revenue*, 234 Ill. 2d 266, 272 (2009); *Shakari v. Department of Financial & Professional Regulation*, 2018 IL App (1st) 170285, ¶ 36. The standard of review depends on whether the

[1]Under the Pension Code, leaves of absence for illness and periods of disability for which a firefighter did not receive a disability pension count as creditable service. 40 ILCS 5/4-108(a) (West 2012). The Village permitted Covello to purchase creditable service while he was on FMLA leave and still on the Village's payroll, which was through December 5, 2014.

- 8 -

question presented is one of fact, one of law, or a mixed question of law and fact. *Beggs v. Board of Education of Murphysboro Community Unit School District No. 186*, 2016 IL 120236, ¶ 50. Regardless of the applicable standard of review, the plaintiff bears the burden to demonstrate error in the agency's determination. *Carrillo v. Park Ridge Firefighters' Pension Fund*, 2014 IL App (1st) 130656, ¶ 21.

¶ 41    The parties disagree on the standard of review applicable to the Pension Board's decision denying Covello line-of-duty disability pension benefits. Covello advocates for a clearly erroneous standard, arguing that the issue decided by the Pension Board involved a mixed question of law and fact. The Pension Board and Village contend that the more deferential manifest weight of the evidence standard is the proper standard because the Pension Board's decision involved only a question of fact.

¶ 42    Here, the relevant question is whether an act of duty caused or contributed to Covello's disability, which has been routinely found to be a question of fact subject to the manifest weight of the evidence standard of review. *Wade v. City of North Chicago Police Pension Board*, 226 Ill. 2d 485, 504-05 (2007); *Marconi v. Chicago Heights Police Pension Board*, 225 Ill. 2d 497, 534 (2006); *Carrillo*, 2014 IL App (1st) 130656, ¶ 22; *Scepurek v. Board of Trustees of the Northbrook Firefighters' Pension Fund*, 2014 IL App (1st) 131066, ¶ 24; *Rose v. Board of Trustees of the Mount Prospect Police Pension Fund*, 2011 IL App (1st) 102157, ¶ 94; *Village of Oak Park v. Village of Oak Park Firefighters Pension Board*, 362 Ill. App. 3d 357, 371 (2005). Applying the manifest weight of the evidence standard, we will not disturb the Pension Board's factual findings unless the opposite conclusion is clearly evident. *People v. Peterson*, 2017 IL 120331, ¶ 39. More specifically, if the record contains evidence supporting the Pension Board's factual conclusions, the Pension Board's conclusions must be affirmed, even if an opposite conclusion is reasonable or we might have reached a different conclusion. *Marconi*, 225 Ill. 2d at 534; *Abrahamson v. Illinois Department of Professional Regulation*, 153 Ill. 2d 76, 88 (1992); *Carrillo*, 2014 IL App (1st) 130656, ¶ 21. In administrative review cases, it is not our function to reweigh the evidence or make an independent determination of the facts. *Abrahamson*, 153 Ill. 2d at 88.

¶ 43    To be entitled to a line-of-duty disability pension, Covello carried the burden of proving that (1) he is a firefighter; (2) he incurred a sickness, accident, or injury; (3) such sickness, accident, or injury was incurred in or resulted from the performance of an act of duty or cumulative effects of acts of duty; (4) he is mentally or physically disabled; and (5) his disability requires that he be placed on disability pension. 40 ILCS 5/4-110 (West 2012); *Thigpen v. Retirement Board of Firemen's Annuity & Benefit Fund*, 317 Ill. App. 3d 1010, 1017 (2000). The only element at issue here is causation, which required Covello to establish a causal connection between his disability and an act of duty. *Wade*, 226 Ill. 2d at 505. Covello was not required to prove that a duty-related accident or illness was the primary or originating cause of his disability; rather, he only needed to prove that a duty-related accident or illness aggravated, contributed, or exacerbated his disability. *Carrillo*, 2014 IL App (1st) 130656, ¶ 32; *Rose*, 2011 IL App (1st) 102157, ¶ 92; *Village of Oak Park*, 362 Ill. App. 3d at 371. And a line-of-duty disability pension may be awarded when a firefighter establishes that an act of duty aggravated a preexisting condition. *Wade*, 226 Ill. 2d at 505; *Scepurek*, 2014 IL App (1st) 131066, ¶ 27; *Thigpen*, 317 Ill. App. 3d at 1020.

¶ 44    Covello claims that the Pension Board erred because it based its decision on whether an act of duty was the sole or primary cause of his disability and not whether an act of duty was a

contributing factor to his disability. Contrary to Covello's claim, the Pension Board applied the correct standard when it concluded that there was *no* link between his asserted act of duty (responding to the call involving Officer Russo) and his disability. And the record amply supports the Pension Board's factual finding that an act of duty was not a causative factor contributing to Covello's permanent disability. Moreover, the Pension Board correctly evaluated Covello's eligibility for line-of-duty disability pension benefits based on the November 1, 2008, date of injury and his asserted disability (PTSD) that Covello specified on his application.

¶ 45    Although every doctor who treated or examined Covello agreed that he was disabled and could not return to his firefighting duties, the doctors disagreed as to whether he suffered from PTSD due to an act of duty. Covello's line-of-duty claim finds the most support in the opinion of Dr. Ripley, who diagnosed him with PTSD and opined that Covello's traumatic disorder and disability were caused by the call involving Officer Russo. At first glance, Covello's claim also finds support in Dr. Dennison's opinion that the line-of-duty incident was not necessarily a cause of his disability but aggravated his condition while he was waiting for his hernia surgery nearly five years after the fact. But Dr. Dennison explained that he observed a decline in Covello's condition while on medical leave waiting for his hernia surgery that was partly caused from the loss of Covello's support system that he had through his fellow firefighters and he was eager to return to work, which the delay in surgery prevented him from doing. Because Covello did not have his support system that he found at work, he began obsessing about the Officer Russo call and his psychological issues deepened. This explanation for Covello's decline, which the Pension Board was entitled to credit, demonstrates that his preexisting conditions of anxiety and depression were aggravated by nonduty stressors (the loss of his firefighter support system) and not by the line-of-duty incident that happened more than four years earlier.

¶ 46    In direct contrast to Dr. Ripley's opinion, Dr. Ostrov opined that Covello's medical records did not support his claim that the work-related incident in 2008 was the cause of his psychological problems. Likewise, Dr. Reff and Dr. Harris did not believe Covello suffered from PTSD, and they similarly conceded that Covello's disability was not likely caused by the 2008 incident. Moreover, Dr. Weine believed that Dr. Ripley overemphasized PTSD, observing that although Covello had some symptoms of posttraumatic stress, he did not meet the full criteria of PTSD, and an exact triggering event for his symptoms could not be identified.

¶ 47    Along with the multiple medical opinions, the Pension Board was also entitled to consider the facts surrounding the call involving Officer Russo and Covello's actions following that call. Although Covello and Officer Russo were friendly with each other before the incident, there is no evidence in the record that their relationship extended beyond on-the-job communications. The record also establishes that after responding to the call, Covello (1) completed the rest of his shift, (2) worked his next assigned shift, (3) did not immediately take time off, (4) did not report any anxiety or other issues associated with that call to his supervisors, (5) continued to perform his job at an acceptable level after that call, (6) was never relieved of his duties during a shift, and (7) did not seek any work based counseling. Although Covello spoke to a fellow firefighter about the incident several times during the following month—expressing anger about the way it was handled—he did not speak again about it in the ensuing years, all the while receiving positive performance evaluations. Moreover, Dr.

- 10 -

Dennison had been treating Covello since 2007, and Covello had spoken to him about the many non-work related causes of his depression and anxiety. It is significant that Dr. Dennison only learned about the 2008 call involving Officer Russo from Covello years later in 2013, after the Village advised Covello that he would need to apply for a disability pension due to his prolonged absence from work or risk losing his job. So while witnessing a fellow public servant's death could be a troubling experience, the circumstances surrounding this incident did not appear to have a profound effect on Covello.

¶ 48    The record demonstrates that Covello had a history of anxiety, depression, and physical problems dating back to at least 2007, and he actively sought treatment for those conditions,—all related to non-work issues—before the 2008 incident. A firefighter's preexisting condition does not preclude a finding of line-of-duty disability pension benefits, but the firefighter still bears the burden of establishing that an on-duty act contributed to or aggravated his condition. *Wade*, 226 Ill. 2d at 505; *Scepurek*, 2014 IL App (1st) 131066, ¶ 27; *Thigpen*, 317 Ill. App. 3d at 1020. The Pension Board's finding that Covello did not meet his burden of establishing a causal connection between his preexisting conditions and a specific act of duty was supported by the record and not against the manifest weight of the evidence. In reaching our finding that the Pension Board's decision was not against the manifest weight of the evidence, we are reminded of the well-established principle that we may not reweigh the evidence, make credibility determinations, or substitute our judgment for that of the Pension Board. *City of Belvidere v. Illinois State Labor Relations Board*, 181 Ill. 2d 191, 204 (1998); *Village of Oak Park*, 362 Ill. App. 3d at 372. And we must affirm the Pension Board's decision when there is competent evidence in the record supporting the decision. *Marconi*, 225 Ill. 2d at 534. The opinions of the independent evaluating doctors coupled with Covello's actions following Officer Russo's death, which demonstrated no impact on either his physical or mental well-being, collectively support the Pension Board's decision awarding a nonduty disability pension. Moreover, the Pension Board was entitled to consider Covello's misleading statements to certain evaluators that he sought treatment with Dr. Dennison only after the incident involving Officer Russo.

¶ 49    Although Covello during the hearing recounted various calls that were indisputably traumatic, he identified the incident involving Officer Russo as the cause of his PTSD on his disability application. Importantly, Covello did not identify any other incidents on his application, either individually or cumulatively, as contributing to his PTSD. Even if we were to consider the numerous traumatic calls that Covello undoubtedly responded to throughout his career, there is no evidence that they triggered PTSD or aggravated Covello's preexisting mental health issues. Specifically, Covello (1) never mentioned any anxiety or stress triggered by an on-duty call to either his supervisors or Dr. Dennison, (2) always completed his shifts, (3) never missed a shift following a call, and (4) continued to receive favorable performance evaluations. Further, once Covello sought psychological counseling from Dr. Ripley, the only triggering incident she focused on was the one involving Officer Russo. Consequently, nothing in the record demonstrates that the Pension Board should have found in Covello's favor by awarding a line-of-duty disability pension. See *Cinkus v. Village of Stickney Municipal Officers Electoral Board*, 228 Ill. 2d 200, 210 (2008) (we will disturb an administrative agency's factual findings only when the opposite conclusion is clearly evident).

¶ 50    It is beyond argument that firefighters and other first responders are repeatedly exposed to stressful and gruesome events. But it is not enough to qualify for a duty disability pension to

point to the stress inherent in the job. And the evidence relating to the only specific incident identified by Covello is such that the Pension Board could properly conclude that Covello had not sustained his burden to show a causal relationship between that incident and his disability.

¶ 51 Covello also claims that the Pension Board abused its discretion in refusing to allow him to purchase additional service credits or modify the effective date of his disability benefits to February 13, 2015, at the earliest. Covello wanted to purchase an additional 10 weeks of service credits outright to increase his service credit to 20 years to fully vest in his pension. Covello assumes that his petition requesting to purchase additional service credit was denied because the Pension Board's final written order awarding nonduty pension disability benefits reflected an effective date of December 5, 2014, and not his posthearing requested date of February 13, 2015. Covello claims that the Open Meetings Act (5 ILCS 120/2(c)(4) (West 2012)) required the Pension Board to issue a written decision explaining its determination of the disability pension's effective date that was reached during a closed session. The Open Meetings Act permits closed meetings to consider evidence or testimony presented in an open hearing provided that a written decision setting forth the reasoning for its decision is made available to the public. 5 ILCS 120/2(c)(4) (West 2012).

¶ 52 Covello asserts that the proper course of action would be for us to remand the cause, directing the Pension Board to enter a formal determination on his petition to modify his pension's effective date. But Covello's requested course of action demonstrates that he has forfeited review of this issue. Covello acknowledges that the Pension Board implicitly denied his motion when it deemed December 5, 2014, as the pension's effective date, but asserts that the Pension Board was required to expressly adjudicate his motion. Given that Covello did not seek an express ruling from the Pension Board on his motion or raise at the administrative level the arguments he raises on appeal, his arguments are forfeited. *Cinkus*, 228 Ill. 2d at 212; *Keeling v. Board of Trustees of the Forest Park Police Pension Fund*, 2017 IL App (1st) 170804, ¶ 45. Furthermore, Covello cites no authority—and we have located none—supporting his entitlement to purchase additional creditable service so as to fully vest his pension. Absent relevant authority, the Pension Board could not have abused its discretion in refusing to award him such relief.

¶ 53                                             CONCLUSION

¶ 54 Because Covello failed to demonstrate a causal connection between any act of duty, individually or collectively, and his permanent disability, we cannot find the Pension Board's decision denying line-of-duty disability pension benefits and awarding nonduty disability pension benefits was against the manifest weight of the evidence. Covello forfeited review of his claim that the Pension Board should have expressly ruled on his motion to extend the effective date of his disability pension by not raising this issue before the Pension Board.

¶ 55 Affirmed.